LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com

Attorneys for Plaintiff

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN E. GROSSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHELL & KAMPETER, INC. d/b/a DIAMOND PET FOODS, and DIAMOND PET FOODS INC.,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION COMPLAINT FOR</u>:<br><br>(1) NEGLIGENT MISREPRESENTATION;<br>(2) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;<br>(3) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW;<br>(4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW;<br>(5) BREACH OF EXPRESS WARRANTY; AND<br>(6) BREACH OF IMPLIED WARRANTY<br><br><u>DEMAND FOR JURY TRIAL</u> |

CLASS ACTION COMPLAINT

1.    Plaintiff Martin E. Grossman ("Grossman" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, as and for this Class Action Complaint against defendants Schell & Kampeter, Inc. d/b/a Diamond Pet Foods and Diamond Pet Foods Inc. (collectively "Defendants"), alleges the following based upon personal knowledge as to himself and his own actions, and, as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

## NATURE OF THE ACTION

2.    Aware of the health risks and environmental damage caused by processed and chemical-laden foods, consumers increasingly demand foods for themselves and for their pets that possess high quality ingredients and are free of contaminants and chemicals.

3.    Defendants know that certain consumers seek out and wish to purchase premium pet foods that possess high quality ingredients and do not contain chemicals or contaminants, and that these consumers will pay more for pet foods that they believe possess these qualities than for pet foods that they do not believe possess these qualities.

4.    As such, Defendants' promises, warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising (hereinafter collectively referred to as "Marketing" or "Claims") center on representations and pictures that are intended to, and do, convey to consumers that their pet food (the "Products"), including their Contaminated Dog Foods,[1] possess certain qualities and characteristics that justify a premium price.

5.    However, Defendants' Marketing is deceptive, misleading, unfair, and/or false because, among other things, the Contaminated Dog Foods include undisclosed Heavy Metals,[2] pesticides, acrylamide, and/or bisphenol A ("BPA").

---

[1] The Contaminated Dog Foods collectively refer to: Taste of the Wild® Grain Free High Prairie Canine Formula Roasted Bison and Roasted Venison Dry Dog Food; Taste of the Wild® Grain Free Pacific Stream Canine Formula Smoked Salmon Dry Dog Food; and Taste of the Wild® Prairie Puppy Formula Grain-Free.

[2] Arsenic, lead, mercury, and cadmium are defined collectively herein as "Heavy Metals."

CLASS ACTION COMPLAINT

6. Defendants' Contaminated Dog Foods do not have a disclaimer regarding the presence of Heavy Metals, pesticides, acrylamide, and/or BPA or that these toxins can accumulate over time in the dog's body to the point where poisoning, injury, and/or disease can occur.

7. Consumers lack the scientific knowledge necessary to determine whether the Products do in fact contain Heavy Metals, pesticides, acrylamide, and/or BPA and to know or to ascertain the true ingredients and quality of the Products.

8. No reasonable consumer seeing Defendants' Marketing would expect that the Products contain Heavy Metals, pesticides, acrylamide, and/or BPA.

9. Reasonable consumers must and do rely on Defendants to report honestly what the Products contain.

10. Further, reasonable consumers, like Plaintiff, would consider the mere inclusion of Heavy Metals, pesticides, acrylamide, and/or BPA in the Contaminated Dog Foods a material fact when considering what pet food to purchase.

11. Defendants knew or should have been aware that a consumer would be feeding the Contaminated Dog Foods to his or her dog multiple times each day, making it the main, if not only, source of food. This leads to repeated exposure of the Heavy Metals, pesticides, acrylamide, and/or BPA to the dog.

12. Defendants intended for consumers to rely on their Marketing, and reasonable consumers did in fact so rely.

13. Consequently, Defendants continue to wrongfully induce consumers to purchase their Contaminated Dog Foods that are not as advertised.

14. Defendants' wrongful Marketing, which includes misleading, deceptive, unfair, and false Marketing and omissions, allowed it to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a premium for the Products that were not sold as advertised.

15. Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up

to and including the present, purchased for use and not resale any of Defendants' Contaminated Dog Foods.

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

17.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district by manufacturing the Contaminated Dog Foods here.  Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

18.    Plaintiff Grossman is, and at all times relevant hereto has been, a citizen of the state of Pennsylvania. Plaintiff Grossman purchased the Contaminated Dog Food line of Taste of the Wild® Grain Free Pacific Stream Canine Formula Smoked Salmon Dry Dog Food, and other Contaminated Foods, from Chewy.com and Braxton's Dog Works between 2012 and 2015 for his two golden retrievers, Lilly and Clara.  He typically purchased 30-lb bags of food and paid approximately $50 per bag.  Prior to purchasing the Contaminated Dog Foods, Plaintiff Grossman saw the nutritional claims and labels on the packaging and on the Chewy.com website, which he relied on in deciding to purchase the Contaminated Dog Foods.  During the time Grossman purchased and fed the Contaminated Dog Foods, due to the false and misleading claims, warranties, representations, advertisements and other marketing by Defendants, Plaintiff Grossman was unaware that the Contaminated Dog Foods contained any level of heavy metals, BPA, pesticides, or acrylamide, and would not have purchased the food if that was fully disclosed.

19.    As a result of Defendants' negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when he paid the purchase price and/or a price premium for the Contaminated Dog Foods that did not deliver what Defendants promised.  Plaintiff paid the above sum in reliance that the labeling of the Contaminated Dog Foods was accurate, that there were no material omissions, and that it was healthy, clean, and safe for dogs to ingest, as well as natural and pure.  Plaintiff would not have purchased the Contaminated Dog Foods had he known it contained Heavy Metals, BPA, pesticides, or acrylamide.  Damages can be calculated through expert testimony at trial.  Further, should Plaintiff encounter the Contaminated Dog Foods in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog Foods.

20.    Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods is incorporated in Missouri with its headquarters located at 103 North Olive Street, Meta, Missouri.

21.    Defendant Diamond Pet Foods Inc. is a wholly owned subsidiary of Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet Foods and is also headquartered at 103 North Olive Street, Meta, Missouri.

22.    Defendants produce the Contaminated Dog Foods at four facilities across the United States: Meta, Missouri; Gaston, South Carolina; Lathrop, California; and Ripon, California. California is the only state where Defendants operate and own two manufacturing facilities. Defendants employ over one hundred employees in the state of California.  These California plants produce significant amounts of pet food.  The Ripon facility sits on 150 acres that includes a farm, mill tower, and pet food ingredient storage and Defendants are currently seeking approval for expansion of this manufacturing facility.

23.    Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the Contaminated Dog Foods under the Taste of the Wild® brand name throughout the United States.  The advertising, labeling, and packaging for the Contaminated Dog Foods, relied upon by Plaintiff, was prepared, reviewed, and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.  The marketing, advertising,

- 4 -
CLASS ACTION COMPLAINT

1    packaging and labeling for the Contaminated Dog Foods was designed to encourage consumers to

2    purchase the Contaminated Dog Foods and reasonably misled the reasonable consumer, i.e.,

3    Plaintiff and the Class, into purchasing the Contaminated Dog Foods.    Defendants own,

4    manufacture, and distribute the Contaminated Dog Foods, and created, allowed, negligently

5    oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling

6    and advertising for the Contaminated Dog Foods.

7         24.    The Contaminated Dog Foods at a minimum, include: [3]

8              (a)    Taste of the Wild® Grain Free High Prairie Canine Formula Roasted Bison

9    and Roasted Venison Dry Dog Food:



27    [3] Discovery may reveal additional Products that also contain unsafe levels of Heavy Metals, pesticides, acrylamide, or BPA and Plaintiff reserves his right to include any such Products in this action.

(b)      Taste of the Wild® Prairie Puppy Formula Grain-Free:



(c)      Taste of the Wild® Grain Free Pacific Stream Canine Formula Smoked Salmon Dry Dog Food:

CLASS ACTION COMPLAINT

## FACTUAL ALLEGATIONS

**I.      Defendants' Marketing of Their Contaminated Dog Foods**

25.      Defendants' package, label, market, advertise, formulate, manufacture, distribute, and sell their Contaminated Dog Foods throughout the United States, including California.

26.      As stated by Defendants, they are "one of the fastest growing pet food manufacturers in the country."  The Contaminated Dog Foods are available at numerous retail and online outlets and are widely advertised.

27.      Defendants' Marketing represents that that their "premium" dog food is made of "the highest quality ingredients and products" for "nutrition-conscious pet owners."

28.      Defendants' business model is premised upon the purported belief that "every pet, from purebred show animal to shelter puppy or kitten, is worthy of the best nutrition."

29.       Defendants state that they "strive to provide honest and accurate information about the ingredients used in Taste of the Wild formulas."

30.      Defendants also repeatedly tout that the Contaminated Dog Foods are natural in that they are as "nature intended."

31.      As shown below, Defendants explain on their website (all while depicting animals in the wild), the brand name of the Contaminated Dog Foods (Taste of the Wild®) is meant to reflect and imply that the Products are natural, akin to what "nature intended" pets to eat in the "Wild," and are formulated "based on your pet's ancestral diet":



CLASS ACTION COMPLAINT

32. Moreover, the Contaminated Dog Foods packaging depicts the same misrepresentations, displays images of wild animals in natural settings, and emphasizes the Products' makeup as being akin to that found in nature and "the Wild":

 

High Prairie Canine® Formula
with Roasted Bison & Roasted Venison
A GRAIN-FREE DIET

The balanced diet that nature intended*

Modern science proves that your dog shares the DNA of the wolf. Years of domestication and excellent care have turned your dog from a short-lived potential foe to a long-lived best friend. Although his DNA remains the same and his tastes demand something of the wild, his diet should provide him with all the best nutrition available today.

33.     Additionally, the packaging describes the ingredients in the Contaminated Dog Foods as "processed under strict human-grade standards to ensure purity," providing "optimal health and vitality," supporting "optimal cellular health" and "overall good health," and helpful in maintaining "the sleek condition of good health":



**Species-Specific Probiotics** – Healthy digestive and immune systems are vital to the overall health of your pet. K9 Strain® Probiotics are developed specifically for dogs and processed under strict human-grade standards to ensure purity. Each cup of Taste of the Wild provides live, active cultures that help support healthy digestion and help your dog maintain an active lifestyle.



**No Grain** – This grain-free formula provides your dog with nutrition for optimal health and vitality.



**Antioxidants** – Antioxidants help protect your dog's overall good health. Vegetables and fruits provide antioxidants, and guaranteed levels of zinc, vitamin E and selenium help support optimal cellular health.



**Omega Fatty Acid Blend** – Omega-6 and omega-3 fatty acids work together to help maintain healthy skin and a shiny coat as well as overall good health.

CLASS ACTION COMPLAINT

1

2



3

4

5

6       34.    Defendants' packaging and advertising also touts its food as "natural" and as

7   providing "the best nutrition available today":

8

9

10

11

12                                    

13

14

15

16

17

18

19

20       35.    Taste of the Wild's motto is "Taste of the Wild Pet Food: Based on your Pet's

21   Ancestral Diet":

22   **Taste of the Wild Pet Food: Based on your Pet's Ancestral Diet**
     https://www.tasteofthewildpetfood.com/ ▾
23   Modern science proves that your dog or cat still shares the DNA of the ancient canine or wild feline.
     Although their tastes demand something of the wild, your pet's diet should provide them with all the best
24   nutrition available today. And that is precisely what they get with **Taste of the Wild**: premium, complete,
     grain-free pet ...
25   Taste of the Wild - Taste of the ... · Our Company · Prey · Contact

26

27

28

CLASS ACTION COMPLAINT

36.     The foregoing Marketing reveals the great lengths Defendants have undertaken to portray their Contaminated Dog Foods as possessing certain qualities and characteristics concerning their composition and quality.

37.     The packaging and advertising of the Contaminated Dog Foods does not disclose that they contain any level of Heavy Metals, BPA, pesticides, or acrylamide:



**The balanced diet that nature intended***

Modern science proves that your puppy shares the DNA of ancient canines, like the wolf. Years of domestication and excellent care have turned your dog from a fierce and wary hunter to a trusting best friend. Although his tastes demand something of the wild, his diet should provide him with all the best nutrition available today. And that is exactly what he gets with Taste of the Wild.

**II.     Defendants' Testing of Their Contaminated Dog Foods**

38.     Defendants' Marketing also prominently emphasizes their rigorous testing of their Products.

39.     For example, Defendants state:

> We understand that it matters what you feed your pet, which is why we work to ensure that all of our formulas are produced to adhere to strict quality and safety standards. As such, we maintain close relationships with our suppliers to continually test our ingredients, production environment, production process and finished products to ensure quality and safety. By implementing the latest scientific and technological advancements, we have developed a comprehensive food safety system that ensures your pet's food is always safe and nutritious.

40.     Defendants also provide:

> **Stringent Purification**
>
> Processed under strict quality and safety standards, our K9 Strain and Viables probiotics are guaranteed to be free of harmful pathogens or other contaminants.

41.     Defendants further assure that food safety is a top priority and that they are dedicated to quality assurance:

CLASS ACTION COMPLAINT

**Do you have a food safety program?**
Absolutely! Food safety is our top priority, which is why our facilities adhere to stringent quality protocols, have a dedicated quality assurance and safety staff and follow "Good Manufacturing Processes" protocols. To learn more about our food safety program, you can visit our website at https://diamondpetcompany.com/how-we-ensure-every-pet-is-getting-the-very-best/nutritional-integrity/.

\* \* \*

At Taste of the Wild, we believe every pet deserves excellent nutrition that tastes great. Every ingredient is carefully selected from trusted sources, each recipe is designed by our veterinarians and nutritionists to meet specific nutritional requirements and every product is tested for quality and safety before leaving our facilities.

42.     To this end, the Marketing contained on Defendants' website further states that their Products, including Taste of the Wild®, are manufactured and sourced in such a way that would prevent any contamination by Heavy Metals, pesticides, acrylamide, and/or BPA:

NUTRITIONAL **INTEGRITY**

THE **HIGHEST QUALITY** INGREDIENTS

When we made the conscious decision to only make pet food you'd be proud to feed your own pet, **we didn't skimp on quality**. That's why **we source the finest ingredients** and establish solid relationships with our trusted suppliers to **ensure we're always getting the very best**. All of our formulas are unique, based on your pet's needs and life stage, but here are just a few of the quality ingredients you'll find in our products.
Real chicken, lamb, salmon, turkey, fowl, bison and venison Vegetables like carrots, peas, sweet potatoes and spinach Fruits like apples, blueberries and cranberries Whole grains such as brown rice, barley and oatmeal Prebiotics and probiotics for healthier digestion.

SUPPLIER MANAGEMENT PROGRAM

***Our ingredients suppliers are approved through a rigorous process intended to validate commitments to food safety and ingredient quality***, and also to ensure financial viability. Our method is to work with fewer suppliers under longer-term arrangements, rather than engage with a host of suppliers participating in a continual bid process. This approach fosters trust, collaboration and continual improvement, and works to encourage vendor-partners to make investments in quality control, food safety training and laboratory testing equipment.

- 12 -
CLASS ACTION COMPLAINT

SCIENTIFIC FORMULATIONS

Our pet food formulas are based on the latest animal nutrition research and are carefully designed to meet your pet's specific life stage. No matter which formula you choose, *you can rest assured you're getting the very best nutrition for a long and healthy life.*

**III.    Defendants Misled Consumers Through Their Deceptive, Misleading, Unfair, and False Marketing and Omissions**

43.    The Defendants' Marketing wrongfully conveys to consumers that Defendants' Contaminated Dog Foods have certain superior qualities and characteristics that they do not actually possess.

44.    For instance, although Defendants misleadingly lead consumers to believe their Contaminated Dog Foods do not contain Heavy Metals, pesticides, acrylamide, or BPA through their Marketing and omissions, Defendants' Products do in fact contain undisclosed Heavy Metals, pesticides, acrylamide, and/or BPA, which are material to reasonable consumers.

45.    For example, the specific product types purchased by Plaintiff were tested and found to contain undisclosed Heavy Metals, pesticides, acrylamide, and/or BPA (material to a reasonable consumer) at the following levels:

CLASS ACTION COMPLAINT

| Product | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg | total pesticide ug per kg | acrylamide ug per kg |
|---|---|---|---|---|---|---|---|
| Taste of the Wild Grain Free Pacific Stream Canine Formula Smoked Salmon Dry Dog Food | 255.40 | 258.00 | 54.20 | 30.90 | 399.20 | 38.92 | 172.90 |
| Taste of the Wild Grain Free High Prairie Canine Formula Roasted Bison and Roasted Venison Dry Dog Food | 155.80 | 276.00 | 59.70 | 16.70 | 394.50 | 460.00 | 86.50 |
| Taste of the Wild® Prairie Puppy Formula Grain-Free | 161 ppb | | 99.6 pb | < 9.8 ppb | 476 pb | | |

46.    Defendants' Marketing wrongfully fails to disclose to consumers the presence of Heavy Metals, pesticides, acrylamide, and/or BPA in Defendants' Contaminated Dog Foods.

47.    Based on Defendants' Marketing, a reasonable consumer would not suspect the presence of Heavy Metals, pesticides, acrylamide, and/or BPA nor would a reasonable consumer be able to detect the presence of Heavy Metals, pesticides, acrylamide, and/or BPA in the Contaminated Dog Foods without conducting his or her own scientific tests, or reviewing scientific testing conducted on the Products.

48.    Reasonable consumers must and do rely on Defendants to report honestly what the Products contain.

49.    In light of Defendants' Marketing, including their supposed stringent quality controls and assurances, Defendants knew or should have known the Contaminated Dog Foods possessed Heavy Metals, pesticides, acrylamide, and/or BPA.

50.    Defendants intended for consumers to rely on their representations, and reasonable consumers did in fact so rely.

51.    Further, the Association of American Feed Control Officials ("AAFCO") provides guidelines concerning the proper labeling and packaging of pet food.  In relevant part, AAFCO provides that all claims made for a product must be truthful and must not be misleading to the consumer.

52.    For example, AAFCO states that individual ingredients must not be over-emphasized to the exclusion of other ingredients.  AAFCO also provides that a vignette, graphic, or pictorial representation on a pet food or specialty pet food label shall not misrepresent the contents of the package.

53.    Yet, Defendants' Contaminated Dog Foods displays images of wild animals in natural settings that emphasize the Products' makeup as being akin to that found in nature and "the Wild," and have text and symbols highlighting the protein and vegetables each product contains. On the other hand, Defendants' Contaminated Dog Foods do not disclose the presence of Heavy Metals, pesticides, acrylamide, and/or BPA.

54.    Thus, the images and Claims utilized by Defendants, in the context of the whole label or packaging of the Contaminated Dog Foods, is misleading, deceptive, and false.

55.    Defendants had a duty to ensure the Contaminated Dog Foods were as represented and not deceptively, misleadingly, unfairly, and falsely marketed.

56.    Pursuant to the foregoing, Defendants' Marketing is deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California.

57.     Defendants acted negligently, recklessly, unfairly, and/or intentionally with their deceptive, misleading, unfair, and false Marketing and omissions.

**IV.    The Pet Food Industry, Including Defendants, Knows that the Average Consumer Cares and Considers What He or She Is Feeding Their Pet**

58.    Consumers are becoming increasingly concerned with what they feed their pets.

CLASS ACTION COMPLAINT

59.    The Pet Food industry has been reporting on the humanization of both pets and pet food for years.

60.    A recent survey done by a pet food giant showed that "95 percent [of pet owners] agreed they saw their canine as part of the family."  And 73% of them responded they would make sure their "pet gets food before they do."[4]

61.    But this is nothing new, as in 2017, a survey had reported the same results: "In the US, 95% of pet owners consider their pets to be part of the family—up 7 points from 2007, according to a survey by Harris Poll."[5]

62.    Indeed, based on this, it was reported that "there isn't much people won't do for their pets, and this sentiment has only strengthened over the past few years, especially for pet food. Pet food accounts for 76% of the pet care category, representing a significant opportunity for pet companies."[6]

63.    And, pet owners want "pet food options that address the same health concerns currently influencing human food production, such as unnatural preservatives and genetically modified ingredients—and they're serious about these preferences."[7]

64.    "Treating pets like one of the family continues to be a popular trend among pet owners; however, today, their purchases are more and more functionally driven as health becomes a top priority."[8]

---

[4] Kelli Bender, *Study Shows Half of Women Would Rather Spend Friday Night with Their Dog than Their Partner*, People (Jul 19, 2018) https://people.com/pets/study-women-prefer-dogs-to-partner/.

[5] *Report: 95% Say Pets Are Part of the Family*, PetfoodIndustry.com (Mar. 9, 2016) https://www.petfoodindustry.com/articles/5695-report---say-pets-are-part-of-the-family.

[6] *Id.*

[7] *The Humanization of Pet Food*, Nielsen.com (Mar. 2016), http://www.nielsen.com/us/en/insights/reports/2016/the-humanization-of-pet-food.html.

[8] *US Pet Food Market Report Reveals Pet Humanization Trend*, Petfoodindustry.com (Sept. 24, 2017), https://www.petfoodindustry.com/articles/6694-us-pet-food-market-report-reveals-pet-humanization-trend

CLASS ACTION COMPLAINT

65.     Thus, consumers are willing to pay a premium for their pet food if their pet food is of superior quality.

V.     **The Inclusion of Heavy Metals, Pesticides, Acrylamide, and/or BPA Is Material to a Reasonable Consumer Based on the Inherent and Known Risks of Consumption and/or Exposure**

66.     Whether a pet food contains Heavy Metals, pesticides, acrylamide, or BPA is material to a reasonable consumer when making purchasing decisions.

67.     Consumption and/or exposure to Heavy Metals, pesticides, acrylamide, and BPA carry known risks.

68.     For instance, based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA).  Moreover, the FDA is considering limiting the action level for arsenic in rice cereal for infants to 100 ppb.

69.     Additionally, drinking water with levels greater than 250 ppb is considered potentially toxic, especially to large animals.

70.     Arsenic poisoning can be caused by acute and/or repeated exposure to the toxin over a long period of time.  Arsenic toxicity can affect the gastrointestinal and cardiovascular systems, as well as lead to circulatory collapse.

71.     Lead is another carcinogen and toxin known to cause health problems.  Exposure to lead in food can build up over time and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental disorders, and affect normal cell metabolism as well as cause serious injuries to the central nervous and gastrointestinal systems.

72.     Mercury can cause damage to the kidneys and neurological, cardiovascular, and nervous systems in dogs.  Exposure to mercury can also interfere with metabolic activity, leading to tissue necrosis and degeneration. Continued exposure to mercury can also injure the inner surfaces of the digestive tract and abdominal cavity.

CLASS ACTION COMPLAINT

73.     Cadmium is extremely toxic and has toxic biological effects at concentrations smaller than almost any commonly found mineral.  Exposure to cadmium has been observed to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking it.  The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.

74.     As used herein, the term "pesticides" refers to a class of chemical or organic substances used to control pests and weeds on cultivated plants.  When pesticides are applied to crops, the residue can remain until it has been harvested for consumption or processing.  The EPA regulates the amount of pesticides allowed in food, and the tolerance varies depending on the substance at issue.  Pesticides have been linked to numerous health problems with animals, such as vomiting, diarrhea, seizures, and death.  Moreover, long-term exposure to pesticides has been connected to birth defects, nerve damage, and various cancers.

75.     Acrylamide is a colorless, odorless chemical substance with numerous industrial applications, including treating waste water discharge and the production of paper and other textiles. Acrylamide is found in tobacco smoke and can occur when food is cooked or processed at high temperatures, such as baking, frying, and roasting.  The EPA has set limits on the acceptable amount of acrylamide in drinking water.  Furthermore, several organizations, including the Department of Health and Human Services, the International Agency for Research on Cancer, and the EPA have concluded that acrylamide is likely to be carcinogenic to humans.  Most importantly, acrylamide is known to be carcinogenic in animals.

76.     Finally, BPA, an industrial chemical that is an endocrine disruptor, has been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems.  The dangers of BPA in human food are recognized by the FDA, as well as by the state of California.  For instance, manufacturers and wholesalers are prohibited from selling any children's products that contain BPA and any infant formula, baby food, or toddler food stored in containers with intentionally-added BPA.

CLASS ACTION COMPLAINT

77.     Based on the foregoing, reasonable consumers, like Plaintiff, would consider the inclusion of Heavy Metals, pesticides, acrylamide, and/or BPA in the Contaminated Dog Foods a material fact when considering what pet food to purchase.

78.     Despite the known risks of exposure to Heavy Metals, pesticides, acrylamide, and BPA, Defendants negligently, recklessly, and/or knowingly sold the Contaminated Dog Foods without disclosing they contain Heavy Metals, pesticides, acrylamide, and/or BPA.

79.     In fact, Defendants expressly admit knowledge that Heavy Metals are "potentially dangerous chemicals" "that can cause vomiting, a painful abdomen, bloody diarrhea, even seizures and kidney or liver failure if eaten," and that these are substances "toxic to animals."[9]

80.     Therefore, Defendants knew or should have known that the presence of Heavy Metals, pesticides, acrylamide, and/or BPA in their Contaminated Dog Foods was material to consumers of the Products.

81.     Additionally, Defendants knew or should have been aware that a consumer would be feeding the Contaminated Dog Foods multiple times each day to his or her dog making it the main, if not only, source of food for the dog.  This leads to repeated exposure of the Heavy Metals, pesticides, acrylamide, and/or BPA to the dog.

82.     Defendants have wrongfully and misleadingly advertised and sold the Contaminated Dog Foods without any label or warning indicating to consumers that the Products contain Heavy Metals, pesticides, acrylamide, and/or BPA, or that these toxins can over time accumulate in the dog's body to the point where poisoning, injury, and/or disease can occur.

83.     Defendants' omissions are material, deceptive, misleading, unfair, false, and reasonably likely to deceive the public.

84.     This is true especially in light of Defendants' long-standing Marketing campaign representing the Contaminated Dog Foods as possessing certain qualities pertaining to their composition and quality in order to induce consumers, such as Plaintiff, to purchase the Products.

---

[9]     TasteoftheWildPetFood.com    (June    30,    2016)    available    at    ( https://www.tasteofthewildpetfood.com/pop-pop-kaboom-managing-pets-fireworks-fear/;  (Aug. 4,  2015)  available  at  https://www.tasteofthewildpetfood.com/what-you-need-to-know-to-get-puppies-through-their-first-summer/.

CLASS ACTION COMPLAINT

85.    The use of such representations, descriptions, and promises makes Defendants' Marketing campaign deceptive based on the presence of Heavy Metals, pesticides, acrylamide, and/or BPA in the Contaminated Dog Foods.

86.    Defendants' above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Dog Foods are healthy, safe, high quality, undergo rigorous testing, and are free of Heavy Metals, pesticides, acrylamide, and/or BPA.

87.    Moreover, a reasonable consumer, such as Plaintiff and other members of the Class, would have no reason to not believe Defendants' statements regarding the quality of the Contaminated Dog Foods.  Defendants' nondisclosure and/or concealment of the toxins in the Contaminated Dog Foods coupled with the misrepresentations alleged herein that were intended to and do, in fact, cause consumers, like Plaintiff and the members of the Class, to purchase a product they would not have bought if the true quality and ingredients were disclosed or pay a premium for such dog food.

88.    As a result of Defendants' wrongful Marketing, which includes misleading, deceptive, unfair, and false statements and omissions, Defendants have generated substantial sales of the Contaminated Dog Foods.

89.    Defendants' wrongful Marketing, which includes misleading, deceptive, unfair, and false representations and omissions, allowed it to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a premium for the Products that were not as advertised.

90.    This is not surprising given that, for example, natural pet food sales represent over $5.5 billion in the United States and have consistently risen over the years:

CLASS ACTION COMPLAINT



**DEFENDANTS' STATEMENTS
AND OMISSIONS VIOLATE CALIFORNIA LAWS**

91.    California law is designed to ensure that a company's claims about its products are truthful and accurate.

92.    Defendants violated California law by incorrectly claiming through their Marketing and omissions that the Contaminated Dog Foods possessed superior qualities when they did not, based on the presence of Heavy Metals, pesticide, acrylamide, and/or BPA.

93.    Defendants' Marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead relying upon each advertised misrepresentation.

94.    Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods were pure, healthy, safe for consumption, and did not contain harmful ingredients, such as arsenic and lead.  Likewise, Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods were natural, pure, and safe despite the presence of BPA in the food.

**PLAINTIFF'S RELIANCE WAS**
**REASONABLE AND FORESEEN BY DEFENDANTS**

95.    Defendants engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods possessed certain qualities.

96.    Defendants' Marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead relying upon each advertised misrepresentation.

97.    When making purchasing decisions, Plaintiff reasonably relied on Defendants' misleading, deceptive, unfair, and false Marketing.

98.    A reasonable consumer would consider the Marketing of a product when deciding whether to purchase.

99.    Plaintiff would not have paid the price premium, or would not have purchased at all, Defendants' Contaminated Dog Foods had he been aware of the true nature of Defendants' Products.

**DEFENDANTS' KNOWLEDGE AND NOTICE OF THEIR BREACHES**
**OF THEIR EXPRESS AND IMPLIED WARRANTIES**

100.    Defendants had sufficient notice of their breaches of express and implied warranties.  Defendants have, and had, exclusive knowledge of the physical and chemical make-up of the Contaminated Dog Foods.  Moreover, Defendants were put on notice by the Clean Label Project about the inclusion of Heavy Metals, BPA, pesticides, acrylamide, and/or other contaminants in the Products.

**PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS**

101.    Defendants knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Contaminated Dog Foods and the target of their Marketing.

102.    Defendants intended their Marketing to be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiff and the proposed Class.

103.    Defendants directly marketed to Plaintiff and the proposed Class through statements on their website, labeling, advertising, and packaging.

CLASS ACTION COMPLAINT

104.    Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

105.    Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of the United States who, from May 1, 2013 to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale (the "Class").

106.    Excluded from the Class are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, coconspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

107.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

108.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class members in a single action will provide substantial benefits to the parties and Court.

109.    Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

(a)    whether Defendants owed a duty of care to Plaintiff and members of the Class;

(b)    whether Defendants knew or should have known that the Contaminated Dog Foods contained Heavy Metals;

(c)    whether Defendants knew or should have known that the Contaminated Dog Foods contained BPA;

(d)    whether Defendants knew or should have known that the Contaminated Dog Foods contained pesticides;

CLASS ACTION COMPLAINT

1    (e)    whether Defendants knew or should have known that the Contaminated Dog

2    Foods contained acrylamide;

3    (f)    whether Defendants wrongfully failed to state that the Contaminated Dog

4    Foods contained Heavy Metals;

5    (g)    whether Defendants wrongfully failed to state that the Contaminated Dog

6    Foods contained BPA;

7    (h)    whether Defendants wrongfully failed to state that the Contaminated Dog

8    Foods contained pesticides;

9    (i)    whether Defendants wrongfully failed to state that the Contaminated Dog

10    Foods contained acrylamide;

11    (j)    whether any of Defendants' Marketing is deceptive, misleading, unfair,

12    and/or false individually or as a whole;

13    (k)    whether Defendants' Marketing is likely to deceive a reasonable consumer;

14    (l)    whether a reasonable consumer would consider the presence of Heavy

15    Metals as a material fact in purchasing pet food;

16    (m)    whether a reasonable consumer would consider the presence of acrylamide

17    as a material fact in purchasing pet food

18    (n)    whether a reasonable consumer would consider the presence of pesticides

19    as a material fact in purchasing pet food;

20    (o)    whether a reasonable consumer would consider the presence of BPA as a

21    material fact in purchasing pet food;

22    (p)    whether Defendants knew or should have known their Marketing is

23    deceptive, misleading, unfair, and/or false;

24    (q)    whether Defendants continue to disseminate their Marketing despite their

25    knowledge that their Marketing is deceptive, misleading, unfair, and/or false;

26    (r)    whether Defendants' wrongful conduct alleged herein was negligent,

27    reckless, and/or intentional;

28

- 24 -

CLASS ACTION COMPLAINT

1    (s)  whether a representation that a product does not contain Heavy Metals is

2 material to a reasonable consumer;

3    (t)  whether a representation that a product does not contain acrylamide is

4 material to a reasonable consumer;

5    (u)  whether a representation that a product does not contain pesticides is

6 material to a reasonable consumer;

7    (v)  whether a representations that a product does not contain BPA is material

8 to a reasonable consumer;

9    (w)  whether Defendants violated California law;

10    (x)  whether Defendants breached their express warranties;

11    (y)  whether Defendants breached their implied warranties;

12    (z)  whether Defendants engaged in unfair trade practices;

13    (aa)  whether Defendants engaged in false advertising;

14    (bb)  whether Defendants made negligent, reckless, and false misrepresentations

15 and omissions;

16    (cc)  whether Plaintiff and the members of the Class are entitled to actual,

17 statutory, and punitive damages; and

18    (dd)  whether Plaintiff and members of the Class are entitled to declaratory and

19 injunctive relief.

20   110.  Defendants engaged in a common course of conduct giving rise to the legal rights

21 sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.

22 Identical statutory violations and business practices and harms are involved.  Individual questions,

23 if any, are not prevalent in comparison to the numerous common questions that dominate this

24 action.

25   111.  Plaintiff's claims are typical of those of the members of the Class in that they are

26 based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

27

28

CLASS ACTION COMPLAINT

112.     Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

113.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

114.     Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

115.     As a result of the foregoing, class treatment is appropriate.

## **COUNT I**

**(Negligent Misrepresentation Against Defendants on Behalf of the Class)**

116.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117.     Plaintiff reasonably placed his trust and reliance in Defendants' Marketing representations and that the Contaminated Dog Foods did not contain Heavy Metals, BPA, pesticide, or acrylamide.

118.     Because of the relationship between the parties, the Defendants owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of Heavy Metals, BPA, pesticides, or acrylamide in the Contaminated Dog Foods or, based upon their superior knowledge, having spoken, to say enough to not be misleading.

119.     Defendants breached their duty to Plaintiff and the Class by providing false, misleading, and/or deceptive information regarding the nature of the Contaminated Dog Foods.

120.     Plaintiff and the Class reasonably and justifiably relied upon the information supplied to them by the Defendants.  A reasonable consumer would have relied on Defendants' own warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up, and included ingredients of the Contaminated Dog Foods.

121.     As a result of these misrepresentations, Plaintiff and the Class purchased the Contaminated Dog Foods at a premium.

122.    Defendants failed to use reasonable care in their communications and representations to Plaintiff and the Class, especially in light of their knowledge of the risks and importance of considering ingredients to consumers when purchasing the Contaminated Dog Foods.

123.    By virtue of Defendants' negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## COUNT II

**(Violations of the California Consumer Legal Remedies Act, California Civil Code Sections 1750, *Et Seq.*, Against Defendants on Behalf of the Class)**

124.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.    Plaintiff and each proposed Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

126.    The Contaminated Dog Foods are "goods," as that term is defined in California Civil Code section 1761(a).

127.    Defendants are each a "person" as that term is defined in California Civil Code section 1761(c).

128.    Plaintiff and each proposed Class member's purchase of Defendants' Products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

129.    Defendants' conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods are healthy and safe for consumption and by failing to make any mention of Heavy Metals, pesticides, or acrylamide in the Contaminated Dog Foods;

(b)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods are natural, pure, and safe and by failing to make any mention of BPA in the Contaminated Dog Foods;

(c)    California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Contaminated Dog Foods were of a particular standard, quality, or grade, when they were of another;

(d)    California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Contaminated Dog Foods with intent not to sell them as advertised; and

(e)    California Civil Code section 1770(a)(16), by representing that the Contaminated Dog Foods have been supplied in accordance with previous representations when they have not.

130.    As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading Marketing described herein in any manner in connection with the advertising and sale of the Contaminated Dog Foods.

131.    Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## <u>COUNT III</u>

**(Violations of the California False Advertising Law, California Business
& Professions Code Sections 17500, *Et Seq.*, Against Defendants on Behalf of the Class)**

132.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

133.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

134.    As set forth herein, Defendants' Claims that, among other representations, the Contaminated Dog Foods are healthy and safe for consumption are literally false and likely to

1  deceive the public.  Likewise, Defendants' statements and images that depict that the Contaminated

2  Dog Foods are natural, pure, and safe are false and likely to deceive the public.

3       135.    Defendants' Claims that, among other representations, the Contaminated Dog

4  Foods are healthy and safe for consumption are untrue or misleading, as is failing to make any

5  mention of Heavy Metals or acrylamide in the Contaminated Dog Foods.  Likewise, Defendants'

6  statements that, among other representations, the Contaminated Dog Foods are natural, pure, and

7  safe are untrue or misleading, as failing to disclose the presence of BPA or pesticides in the dog

8  food.

9       136.    Defendants knew, or reasonably should have known, that all these Claims were

10  untrue or misleading.

11       137.    Defendants' conduct is ongoing and continuing, such that prospective injunctive

12  relief is necessary, especially given Plaintiff's desire to purchase the Products in the future if they

13  can be assured that, so long as the Contaminated Dog Foods are, as advertised, healthy and safe

14  for consumption and do not contain Heavy Metals, BPA, pesticides, and/or acrylamide.

15       138.    Plaintiff and members of the Class are entitled to injunctive and equitable relief,

16  and restitution in the amount they spent on the Contaminated Dog Foods.

## COUNT IV

**(Violations of the California Unfair Competition Law, California Business
& Professions Code §§17200, *Et Seq.*, Against Defendants on
Behalf of the Class)**

21       139.    Plaintiff incorporates by reference and realleges each and every allegation

22  contained above, as though fully set forth herein.

23       140.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business

24  act or practice."  Cal. Bus. & Prof. Code §17200.

25  **I.    Fraudulent**

26       141.    Defendants' statements that, among other representations, the Contaminated Dog

27  Foods are pure, natural, and healthy, and safe for consumption are literally false and likely to

- 29 -

CLASS ACTION COMPLAINT

deceive the public, as is Defendants' failing to make any mention of Heavy Metals, pesticides, acrylamide, and/or BPA in the Contaminated Dog Foods.

**II.** **Unlawful**

142.   As alleged herein, Defendants have advertised the Contaminated Dog Foods with false or misleading Claims, such that Defendants' actions as alleged herein violate at least the following laws:

   • The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

   • The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**III.** **Unfair**

143.   Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

144.   Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

145.   Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

146.   In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

CLASS ACTION COMPLAINT

147.    On behalf of himself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale the Contaminated Dog Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT V

**(Breach of Express Warranty Against Defendants on Behalf of the Class)**

148.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

149.    As set forth herein, Defendants made express representations to Plaintiff and the Class that, among other representations, the Contaminated Dog Foods are as "nature intended" and formulated "based on your pet's ancestral diet."

150.    Defendants also made express representations to Plaintiff and the Class that the Contaminated Dog Foods were pure, healthy, and safe for consumption.

151.    Defendants likewise made express representations to Plaintiff and the Class that the Contaminated Dog Foods are natural, pure, and safe.

152.    These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

153.    There was a sale of goods from Defendants to Plaintiff and the members of the Class.

154.    On the basis of these express warranties, Defendants sold the Contaminated Dog Foods to Plaintiff and the Class.

155.    Defendants knowingly breached the express warranties by including Heavy Metals, BPA, pesticides, and/or acrylamide in the Contaminated Dog Foods.

156.    Defendants were on notice of this breach as they were aware of the included Heavy Metals, BPA, pesticides, acrylamide, and/or other contaminates in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Project that showed the Products as unhealthy.

157.    Privity exists because Defendants expressly warranted to Plaintiff and the Class that the Contaminated Dog Foods were healthy, safe, natural, and/or pure.

158.    Plaintiff and the Class reasonably relied on the express warranties by Defendants.

159.    As a result of Defendants' breaches of their express warranties, Plaintiff and the Class sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendants represented.

160.    Plaintiff, on behalf of himself and the Class, seeks actual damages for Defendants' breach of express warranty.

## COUNT VI

**(Breach of Implied Warranty Against Defendants on Behalf of the Class)**

161.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

162.    As set forth herein, Defendants made affirmations of fact on the Contaminated Dog Foods' labels to the Class that, among other representations, the Contaminated Dog Foods are as "nature intended" and formulated "based on your pet's ancestral diet."

163.    Defendants also made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiff and the Class that, among other representations, the Contaminated Dog Foods were pure, healthy, and safe for consumption and did not contain Heavy Metals or acrylamide.

164.    The Contaminated Dog Foods did not conform to these affirmations and promises as they contained Heavy Metals and/or acrylamide at alarming and unsafe levels.

165.    Defendants also made affirmations of fact on the Contaminated Dog Foods' labels to Plaintiff and the Class that Contaminated Dog Foods were natural dog food and did not contain BPA or pesticides.

166.    The Contaminated Dog Foods did not conform to these affirmations and promises as they contain BPA and/or pesticides.

167.    These promises became part of the basis of the bargain between the parties and thus constituted implied warranties.

168.    Defendants are merchants engaging in the sale of goods to Plaintiff and the members of the Class.

CLASS ACTION COMPLAINT

169.    There was a sale of goods from Defendants to Plaintiff and the members of the Class.

170.    Defendants breached the implied warranties by selling the Contaminated Dog Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained Heavy Metals, BPA, pesticides, and/or acrylamide.

171.    Defendants were on notice of this breach as they were aware of the Heavy Metals, BPA, pesticides, and/or acrylamide included in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Project that showed the Products as unhealthy.

172.    Privity exists because Defendants impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Dog Foods were pure, healthy, natural, and safe and by failing to make any mention of the Heavy Metals, pesticides, acrylamide, and/or BPA.

173.    As a result of Defendants' breaches of their implied warranties of merchantability, Plaintiff and the Class sustained damages as they paid money for the Contaminated Dog Foods that were not what Defendants represented.

174.    Plaintiff, on behalf of himself and the Class, seeks actual damages for Defendants' breach of implied warranty.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendants as to each and every Count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.    An order enjoining Defendants from selling the Contaminated Dog Foods until the higher and/or unsafe Heavy Metals, pesticides, acrylamide, and/or BPA are removed;

C.    An order enjoining Defendants from selling the Contaminated Dog Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.    An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law, False Advertising Law, or CLRA, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendants to pay all actual and statutory damages permitted under the Counts alleged herein;

I.      An order requiring Defendants to pay punitive damages on any Count so allowable;

J.      An order awarding attorneys' fees and costs to Plaintiff, and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 28, 2018                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                          Robert K. Shelquist
                                          Rebecca A. Peterson (241858)

                                          BY: _s/ Rebecca A. Peterson_
                                          Rebecca A. Peterson, #392663
                                          100 South Washington Ave., Suite 2200
                                          Minneapolis, MN 55401
                                          Telephone:   612-339-6900
                                          Facsimile:   612-339-0981
                                          E-mail:      rkshelquist@locklaw.com
                                                       rapeterson@locklaw.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITE DEPALMA GREENBERG, LLC
Joseph DePalma
Steven J. Greenfogel
Susana Cruz-Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail:      jdepalma@litedepalma.com
                sgreenfogel@litedepalma.com
                scruzhodge@litedepalma.com

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson,
Karla M. Gluek
Raina C. Borrelli
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone:  (612) 333-8844
Facsimile:  (612) 339-6622
E-mail:      dgustafson@gustafsongluek.com
                kgluek@gustafsongluek.com
                rborrelli@gustafsongluek.com

ROBBINS ARROYO LLP
Kevin A. Seely
Steven M. McKany
600 B Street, Suite 1900
San Diego, CA 92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991
E-mail:      kseely@robbinsarroyo.com
                smckany@robbinsarroyo.com

CUNEO GILBERT & LADUCA, LLP
Charles Laduca
Katherine Van Dyck
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone:  (202) 789-3960
Facsimile:  (202) 789-1813
E-mail:      charles@cuneolaw.com
                kvandyck@cuneolaw.com

Attorneys for Plaintiff

- 35 -

CLASS ACTION COMPLAINT