UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN E. GROSSMAN, and RICHARD DAVID CLASSICK, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCHELL & KAMPETER, INC. d/b/a DIAMOND PET FOODS, and DIAMOND PET FOODS INC.,<br><br>Defendants. | No. 2:18-cv-02344-JAM-AC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs Martin E. Grossman and Richard David Classick, Jr. ("Plaintiffs") bring this putative class action against Schell & Kampeter, Inc. d/b/a Diamond Pet Foods and Diamond Pet Foods Inc. (collectively "Diamond" or "Defendants") for damages sustained from the purchase of dog food allegedly containing undisclosed levels of heavy metals, BPA, pesticides, and/or acrylamides. Second Amended Compl. ("SAC"), ECF No. 9. Defendants move to dismiss. Mot., ECF No. 13.

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 5, 2019.

1

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The following facts are taken as true for purposes of this motion. Plaintiff Martin E. Grossman ("Mr. Grossman") has two Golden Retrievers, named Lilly and Clara. SAC ¶ 18. Mr. Grossman, a citizen of Pennsylvania, bought Taste of the Wild® Grain Free Pacific Stream Canine Formula Smoked Salmon Dry Dog Food for Lilly and Clara from Chewy.com and Pennsylvania-based Braxton's Dog Works between 2012 and 2015. Id.

Plaintiff Richard David Classick, Jr. ("Mr. Classick") has a Blue Nose American Pitbull named Otis. SAC ¶ 20. Mr. Classick, a citizen of California, bought Taste of the Wild® Grain Free High Prairie Canine Formula Roasted Bison and Roasted Venison Dry Dog Food for Otis from Amazon.com between 2017 and 2018. Id.

Defendant Schell & Kampeter, Inc., d/b/a Diamond Pet Foods ("Diamond") is incorporated and headquartered in Missouri, and manufactures, markets, and sells dog food under the brand name Taste of the Wild® throughout the United States. SAC ¶¶ 22, 25. Diamond produces dog food at four facilities, including at facilities in Lathrop, California and Ripon, California. Id. ¶ 24. (Plaintiffs also named "Diamond Pet Foods Inc.," as a defendant, which they allege is a wholly owned subsidiary of Schell & Kampeter. See SAC. According to Diamond, Diamond Pet Foods Inc. does not exist. Mot. at 2.)

Diamond markets the Taste of the Wild® brand as being "premium" dog food made of "the highest quality ingredients and products" for "nutrition-conscious pet owners." SAC ¶ 29. Diamond explains its products are akin to what "nature intended" the animal to eat in the wild and formulated "based on your pet's

2

ancestral diet." Id. ¶ 33. Similarly, the packaging of the Taste of the Wild® products displays images of wild animals in natural settings. Id. ¶ 34. Additionally, the packaging describes the ingredients of the products as "processed under strict human-grade standards to ensure purity," providing "optimal health and vitality," supporting "optimal cellular health" and "overall good health," and helpful in maintaining "the sleek condition of good health." Id. ¶ 35.

Diamond's packaging and advertising do not disclose that the products contain any level of heavy metals (including arsenic, lead, mercury, and cadmium), bisphenol A ("BPA"), pesticides, or acrylamide. SAC ¶ 39. Diamond's marketing also emphasizes the company's high standards and the rigorous testing of its products to ensure quality, safety, and purity. Id. ¶¶ 40-44. According to Plaintiffs, this marketing, advertising, and packaging is deceptive because, per tests conducted on the products, the three Taste of the Wild® products purchased by Plaintiffs contained undisclosed levels of heavy metals, pesticides, acrylamide, and/or BPA. Id. ¶¶ 45-50, 52-56. The presence of these contaminants carries health risks to pets and would be material to an owner's purchasing decision. Id. ¶¶ 68-79. Plaintiffs contend that Diamond knew or should have known of the presence of these alleged contaminations because of its stringent quality controls, knowledge of the production process, and from notice by the Clean Label Project. Id. ¶¶ 51, 102. Plaintiffs further claim that Diamond's wrongful marketing allowed it to capitalize on, and profit from, consumers who paid the purchase price or a premium for the products that were not as advertised. Id. ¶ 91.

1 | Plaintiffs saw "the nutritional claims and labels on the packaging" and on the websites from which they purchased the products and relied on these claims and labels in deciding to purchase the products. Id. ¶¶ 18-21. Plaintiffs were unaware the food contained any level of the alleged contaminants, and had they known Plaintiffs would not have purchased the products or paid the price premium for the Products. Id. Plaintiffs do not allege any physical injuries.

Grossman filed the Complaint on August 28, 2018, alleging class claims and jurisdiction under CAFA. Compl., ECF No. 1. The First Amended Complaint was filed on September 5, 2018, adding Classick as a plaintiff. First Amended Compl., ECF No. 4. On October 18, 2018, Plaintiffs filed the operative Second Amended Complaint, bringing six causes of action against Diamond: (1) negligent misrepresentation; (2) violations of the California Consumer Legal Remedies Act ("CLRA"); (3) violations of the California False Advertising Law ("FAL"); (4) violations of the California Unfair Competition Law ("UCL"); (5) breach of express warranty; and (6) breach of implied warranty. Second Amended Compl., ECF No. 9. Plaintiffs bring the complaint on behalf of a putative class consisting of "All persons who are citizens of the United States who, from May 1, 2013 to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale." SAC ¶ 107.

Defendants move to dismiss the Second Amended Complaint in its entirety. Mot., ECF Nos. 13, 18 and 19. Plaintiffs oppose the motion. Opp'n, ECF Nos. 14, 21 and 22.

///

II. OPINION

A. <u>Personal Jurisdiction</u>

Diamond moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing this Court lacks personal jurisdiction over Diamond with respect to Mr. Grossman's claims. Mot. at 6-7. Diamond does not argue a lack of personal jurisdiction with respect to Mr. Classick's claims. Id. at 7.

1. <u>General Jurisdiction</u>

A court may assert general (or "all-purpose") jurisdiction over a defendant in a forum where the defendant is "fairly regarded as at home." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014) (quoting on <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 924 (2011)). The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. <u>Daimler</u>, 571 U.S., at 137. In an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." <u>Daimler</u>, 571 U.S., at 138-139, n.19.

Here, Diamond is incorporated and headquartered in Missouri. SAC ¶¶ 22-23. Diamond is therefore not "at home" in California. And while Plaintiffs allege that Diamond operates two of its four manufacturing plants in California (id. at ¶ 24), those operations are not substantial enough to make Diamond "fairly regarded as at home" in California. Thus, this Court does not have general jurisdiction over Diamond.

2. <u>Specific Jurisdiction</u>

In the absence of general jurisdiction, a nonresident may

5

only be subject to suit in the forum state if specific jurisdiction exists. For a court to exercise specific jurisdiction over a defendant, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017) (internal citation and quotation marks omitted) (emphasis original); see also Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (requiring the same). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger, 374 F.3d at 800, 802.

Mr. Grossman has failed to carry his burden. Plaintiffs' opposition brief states that "(1) [Diamond] purposefully availed itself of this forum, (2) the claims arise out of [Diamond's] forum-related activities, and (3) the exercise of jurisdiction is reasonable." Opp'n at 4. But this conclusory recitation of the Ninth Circuit's specific jurisdiction standard is insufficient. Mr. Grossman fails to make the required prima facie showing that his claims "arise[] out of or relate to [Diamond's' forum-related activities." Schwarzenegger, 374 F.3d at 800. Mr. Grossman viewed the packaging and advertising in Pennsylvania, purchased the products while in Pennsylvania, and used the products in Pennsylvania. SAC ¶¶ 18-19. The alleged injury, if any, would have occurred in Pennsylvania. And while Diamond maintains two of its four production facilities in California, Mr. Grossman never specifically alleges a connection between *his* suit or claims and Diamond's manufacturing presence in California. See

Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007) (explaining that a plaintiff "must show that he would not have suffered an injury 'but for' [defendant's] forum-related conduct.").

Therefore, this Court cannot exercise specific personal jurisdiction over Diamond with respect to Mr. Grossman's claims.

### 3. Pendant Personal Jurisdiction

Given the existence of personal jurisdiction over Diamond for Mr. Classick's claims, Plaintiffs' request this Court exercise pendent personal jurisdiction over Diamond with respect to Mr. Grossman's claims and thereby adjudicate the claims together to avoid piecemeal litigation. Mot. at 5. "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) (adopting the doctrine of pendent personal jurisdiction). But "[p]endent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." Id. at 1180–81. Plaintiffs assert no federal claims here. Nor is this Court convinced the interests of judicial economy would be served by asserting pendent personal jurisdiction over Mr. Grossman's claims. See infra Section II.B.

This Court declines to exercise pendent personal

7

jurisdiction over Diamond with respect to Mr. Grossman's claims. Action Embroidery, 368 F.3d at 1181 (holding "the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court.") This Court further finds that any attempt to amend is futile and dismisses Mr. Grossman's claims with prejudice.

### B. Nationwide Class Claims

Diamond argues that any claims by purchasers based outside of California should be dismissed under Mazza v. Am. Honda Motor Co., 666 F.3d 581 (9th Cir. 2012). Mot. at 3-6. In Mazza, the Ninth Circuit held "[u]nder the facts and circumstances of [the] case," certain choice-of-law rules dictated that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." Mazza, 666 F.3d at 594.

However, because this Court dismissed Mr. Grossman's claims against Diamond for lack of personal jurisdiction, and because Mr. Classick is a California resident, this Court need not formally rule on the suitability of nationwide class claims. See Speyer v. Avis Rent a Car Sys., Inc., 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005), aff'd, 242 F. App'x 474 (9th Cir. 2007) (addressing only issues applicable to named plaintiffs because courts "generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification.") (quoting Barth v. Firestone Tire & Rubber Co., 661 F. Supp. 193, 203 (N.D. Cal. 1987)). Nevertheless, given Diamond's compelling arguments, Plaintiffs may wish to reconsider nationwide class claims. See Forcellati

8

v. Hyland's, Inc., 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (cautioning named plaintiff, given Mazza, to "seriously consider whether he can maintain a nationwide class on all of his claims throughout this litigation" with respect to future plaintiffs).

### C. Claims Sounding in Fraud

#### 1. Pleading of Claims

Diamond argues Plaintiffs' fraud and consumer-protection claims (under the CLRA, FAL, UCL, and the common-law claim for negligent misrepresentation) are not pleaded with particularity as required by Rule 9(b). Mot. at 7-10 (citing Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-26 (9th Cir. 2009)). Plaintiffs agree the heightened pleading standard of Rule 9(b) applies to claims like these, which sound in fraud. Opp'n at 6-11. This Court concurs. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Kearns, 567 F.3d at 1124 (9th Cir. 2009) (quoting Vess, 317 F.3d at 1106). Diamond argues that the SAC provides the "who," but not the "what, where, when, and how." Mot. at 8. This Court disagrees. The SAC names each plaintiff and defendant (the "who"); alleges when each plaintiff began purchasing the products and when they stopped (the "when"); specifies the websites from which each plaintiff purchased the product and the presence of the claims and packaging information (the "where"); includes, through text and photographs, the claims on the specific products they allege are false or misleading (the "what"); and alleges the claims are false or misleading due to the presence of alleged undisclosed

9

contaminants and that Plaintiffs would not have purchased the products had they known of the presence of those contaminants (the "how"). SAC ¶¶ 18, 20, 24-26, 34-36, 39. These allegations sufficiently comply with the pleading standard of Rule 9(b). See Zeiger v. WellPet LLC, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018).

### 2. Affirmative Misrepresentations

Diamond further argues the alleged misstatements upon which Plaintiffs supposedly relied are mere puffery, which cannot support Plaintiffs causes of action. Mot. at 9 (citing Vitt v. Apple Computer, Inc., 469 Fed. App'x. 605, 607 (9th Cir. 2012)). "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under the UCL, FAL, or CLRA. Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005). However, "[w]hile product superiority claims that are vague or highly subjective often amount to nonactionable puffery, misdescriptions of specific or absolute characteristics of a product are actionable." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) (internal citations and quotations omitted). The alleged misrepresentations from the packaging—those upon which Plaintiffs allegedly relied—include that the food provides the "balanced diet that nature intended" and "the best nutrition available today"; contains probiotics "developed specifically for dogs and processed under strict human-grade standards to ensure purity"; and helps support "optimal cellular health" and maintain "overall good health." SAC ¶¶ 34-35. While some of these are closer calls than others, these statements go beyond mere puffery, into assertions of fact.

See WellPet, 304 F. Supp. 3d at 851.  The statements convey that the products are nutritious and safe, and Plaintiffs specifically allege the products do not conform to these facts because they contain heavy metals, pesticides, acrylamide, and/or BPA, which are associated with a variety of health risks.  These alleged misstatements support Plaintiffs' claims sounding in fraud.

Nevertheless, Plaintiffs only allege they relied upon the nutritional claims and labels they saw on the packaging and on Amazon.com and Chewy.com (the "websites of purchase").  SAC ¶¶ 18, 20, 26, 34-36, 39.  There are no allegations that Plaintiffs relied on any statements beyond those, including those on Diamond's website or in other advertising or marketing materials.  SAC ¶¶ 29-33, 37, 40-44.  Misstatements upon which Plaintiffs could not or did not rely cannot support a claim sounding in fraud.  See e.g., Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1363 (Cal. Ct. App. 2010); see also In re Hydroxycut Mktg. & Sales Practices Litig., 801 F. Supp. 2d 993, 1006-07 (S.D. Cal. 2011).  Thus, claims relying on affirmative misrepresentations are limited to alleged misstatements on the products' packaging or on the websites of purchase.

Thus, Defendants' motion to dismiss Plaintiffs' fraud and consumer-protection claims is denied with respect to alleged affirmative misstatements appearing on the products' packaging or websites of purchase, and is granted with respect to any other alleged misstatements.

       3.   Omissions

Omissions may be the basis of fraud-based claims, but "to be actionable the omission must be contrary to a representation

actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*." Hodsdon v. Mars, Inc., 891 F.3d 857, 861 (9th Cir. 2018) (quoting Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 835 (Cal. Ct. App. 2006)) (emphasis in original). There are four circumstances where a duty to disclose a fact arises: "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 255 (Cal. Ct. App. 2011).

Plaintiffs argue that Diamond had a duty to disclose the presence of the contaminants in its products because it had exclusive knowledge of material facts (the presence of contaminants in its products) not known to the Plaintiffs, either given its stringent quality controls and assurances or by being put on notice by the Clean Label Project. SAC ¶¶ 51, 102. Plaintiffs adequately allege, and Diamond does not seem to refute, that the presence of the alleged contaminants in the products would be material. And while the allegation that Diamond was put on notice by the Clean Label Project is too vague because it does not explain what the Clean Label Project is or why its existence is sufficient to put Diamond on notice, the other allegations in the SAC—including Diamond's knowledge of its production and stringent standards—are nonetheless pleaded with reasonable particularity and can sustain an omission-based claim.

12

WellPet, 304 F. Supp. 3d at 852.

Defendants' motion to dismiss Plaintiffs' fraud and consumer-protection claims with respect to alleged omissions is therefore denied.

### 4. Economic Loss Rule

Diamond also contends Plaintiffs' claim for negligent misrepresentation, at least to the extent based on omissions, is barred by the economic loss rule. Mot. at 11, fn. 3. "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (Cal. 2004). A tort claim may proceed where a defendant breaches a duty "either completely independent of the contract or arises from conduct which is both intentional and intended to harm" including "where the contract was fraudulently induced." Id. at 989-90. The exceptions described in Robinson leaves open whether the economic loss rule applies to claims for negligent misrepresentation, and district courts in the Ninth Circuit are divided on this question. See Crystal Springs Upland Sch. v. Fieldturf USA, Inc., 219 F. Supp. 3d 962, 969 (N.D. Cal. 2016) (collecting cases).

Here, Plaintiffs do not allege any property damage or any actual physical injury to themselves or their pets, and instead allege they were "injured when [they] paid the purchase price and/or a price premium for the Contaminated Dog Foods that did not deliver what Defendants promised." SAC ¶¶ 19, 21. However, Plaintiffs negligent misrepresentation claim sounds far more in

13

fraud than breach of contract or negligence.  See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc., 315 F. App'x 603, 607 (9th Cir. 2008) ("We hold that California law classifies negligent misrepresentation as a species of fraud for which economic loss is recoverable.") (internal citations and quotations omitted).  As such, this Court is not persuaded that the economic loss rule requires Plaintiffs' negligent misrepresentation be dismissed as pled.  See Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc., No. 1:16-cv-00371-DAD-SMS, 2016 WL 3519294, at *4–5 (E.D. Cal. June 27, 2016).

    D.    Express Warranty Claim

To state a claim for breach of express warranty under California law, a plaintiff "must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (Cal. Ct. App. 1986).  Any "affirmation of fact or promise made by the seller to the buyer which relates to the goods" or any "description of the goods" which becomes "the basis of the bargain" creates an express warranty.  Cal. Com. Code § 2313(1). Plaintiffs have alleged specific representations made by Diamond on the packaging of the products—which can be tested and disproved in discovery—and reliance on those representations. See supra Section II.C.2.; WellPet, 304 F. Supp. 3d at 853 (N.D. Cal. 2018).  However, Plaintiff only alleges reliance on the statements on the products' packaging and on the websites of purchase.

Thus, Defendants' motion to dismiss Plaintiffs' express

warranty claim is denied with respect to any affirmation of fact, promise, or description of the goods appearing on the products' packaging or websites of purchase, and is granted with respect to any other alleged representations.

### E. Implied Warranty Claim

To bring a claim for breach of implied warranty, a plaintiff "must stand in vertical contractual privity with the defendant." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) (citing Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005)). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain. Thus, an end consumer ... who buys from a retailer is not in privity with a manufacturer." Clemens, 534 F.3d at 1023 (citing Osborne v. Subaru of Am., Inc., 198 Cal. App. 3d 646, 656 n.6, (Cal. Ct. App. 1988)).

Here, Plaintiffs bought the products from retailers, not directly from Diamond. SAC ¶¶ 18, 20. The exceptions to the privity rule for cases involving food for human consumption and for reliance on labels or advertising materials for alleged violations of express warranties do not apply here. Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 696 (Cal. 1954). Acknowledging this hurdle, Plaintiffs request that this Court recognize the "third-party beneficiary exception" to the privity requirement. See WellPet, 304 F. Supp. 3d at 854-55 (N.D. Cal. 2018) (discussing the split in California district courts in recognizing this exception). But the Ninth Circuit has not recognized this exception, and has clearly stated that "California courts have painstakingly established the scope of

the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it." Clemens, 534 F.3d, at 1024. Accordingly, this Court declines to adopt a third-party beneficiary exception to the privity requirement.

This Court finds that Plaintiffs cannot sustain a breach of implied warranty claim because they lack vertical privity with Diamond. Because any attempt to amend is futile, Plaintiffs' sixth cause of action for breach of implied warranty is dismissed with prejudice.

F. Equitable Relief

Diamond argues that if any of Plaintiffs' claims for monetary damages survive, Plaintiffs claims for equitable relief, which they seek under the CLRA, FAL, UCL, and as a general demand in the prayer for relief, must be dismissed. Mot. at 13 (citing Munning v. Gap, Inc., 238 F. Supp. 3d 1195, 1203-04 (N.D. Cal. 2017)). "It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992) (internal citations and quotations omitted). However, in a pleading, a plaintiff may seek both monetary relief and, in the alternative, equitable relief. Fed. R. Civ. P. 8(d). California district courts are divided on whether claims for equitable relief should be dismissed at the pleading stage if a plaintiff properly states a claim for relief that carries a remedy at law. See Luong v. Subaru of Am., Inc., No. 17-CV-03160-YGR, 2018 WL 2047646, at n.7 (N.D. Cal. May 2,

2018) (collecting cases). This Court sees no reason to dismiss Plaintiffs' theories for equitable remedies at this stage simply because Plaintiffs have sufficiently pled theories supporting monetary relief. However, Plaintiffs appear to have pled these theories jointly, rather than clearly as alternatives.

Additionally, to state a claim for injunctive relief, a plaintiff must allege "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 970-971 (9th Cir. 2018), cert. denied, No. 18-304, 2018 WL 4350853 (U.S. Dec. 10, 2018). Here, Plaintiffs have failed to sufficiently state a claim for injunctive relief because the allegations do not include that they want to purchase the product in the future. SAC ¶¶ 19, 21.

Accordingly, Plaintiffs' claims for equitable relief are dismissed without prejudice. Nevertheless, this Court grants Plaintiffs leave to amend the complaint to cure these pleading defects. Fed. R. Civ. P. 15(a) ("[T]he court should freely give leave [to amend] when justice so requires.").

### III. ORDER

For the reasons set forth above, this Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (ECF No. 13) as follows:

1. GRANTED as to this Court's lack of personal jurisdiction over Mr. Grossman's claim, which are dismissed with prejudice;

2. DENIED as to Plaintiffs' First, Second, Third, Fourth,

17

and Fifth Causes of Action with respect to alleged omissions or affirmative misstatements appearing on the products' packaging or websites of purchase;

3. GRANTED as to Plaintiffs' First, Second, Third, Fourth, and Fifth Causes of Action with respect to alleged affirmative misstatements other than those appearing on the products' packaging or websites of purchase;

4. GRANTED as to Plaintiffs Sixth Cause of Action for breach of implied warranty, which is dismissed with prejudice; and

5. GRANTED as to Plaintiffs claims for equitable remedies, which are dismissed without prejudice.

If Plaintiff elects to amend his complaint with respect to the equitable remedy claims, Plaintiffs shall file a Third Amended Complaint within twenty days of this Order. Defendants' responsive pleading is due twenty days thereafter.

IT IS SO ORDERED.

Dated: March 20, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE