1  SHOOK HARDY & BACON L.L.P.
   AMIR NASSIHI (SBN 235936)
2  anassihi@shb.com
   M. KEVIN UNDERHILL (SBN 208211)
3  kunderhill@shb.com
   One Montgomery, Suite 2600
4  San Francisco, CA 94104
   Tel: 415.544.1900 | Fax: 415.391.0281
5
   SHOOK HARDY & BACON L.L.P.
6  STEVEN D. SODEN (admitted *pro hac vice*)
   ssoden@shb.com
7  2555 Grand Boulevard
   Kansas City, MO 64108
8  Tel: 816.474.6550 | Fax: 816.421.5547
9  *Attorneys for Defendant*
   SCHELL & KAMPETER, INC. d/b/a
10 DIAMOND PET FOODS
   (also improperly named as Diamond Pet Foods Inc.)
11
                    UNITED STATES DISTRICT COURT
12
                  EASTERN DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| 14 RICHARD DAVID CLASSICK, JR., individually and on behalf of all others similarly situated, | Case No. 2:18-cv-02344-JAM-AC |
| 15 | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED CLASS ACTION COMPLAINT** |
| 16 Plaintiff, | |
| 17 v. | |
| 18 SCHELL & KAMPETER, INC. d/b/a DIAMOND PET FOODS, and DIAMOND PET FOODS INC., | Date:   April 20, 2021 Time:  1:30 p.m. Dept:  Courtroom 6, 14th Floor Judge: Hon. John A. Mendez |
| 19 | |
| 20 Defendants. | Complaint Filed: August 28, 2018 |
| 21 | First Amended Complaint Filed: September 5, 2018 |
| 22 | |
| 23 | Second Amended Complaint Filed: October 18, 2018 |
| 24 | Third Amended Complaint Filed: April 9, 2019 |
| 25 | |
| 26 | Fourth Amended Complaint Filed: January 19, 2021 |

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 20, 2021, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 6, of the U.S. District Court located at 501 I Street, Sacramento, CA 95814, Schell & Kampeter, Inc. d/b/a Diamond Pet Foods (also improperly named as Diamond Pet Foods Inc.) will and hereby does move the Court for an order dismissing with prejudice Plaintiff's claims for negligent misrepresentation, CLRA and breach of express warranty.

This Motion is made pursuant to Rule 12(b)(6) on the grounds that Plaintiff has not pleaded facts showing actual or reasonable reliance.

This Motion is made following several conferences of counsel pursuant to this Court's standing order, the most recent of which took place on February 8, 2021.

The Motion is based on this Notice, the Memorandum of Points and Authorities, the pleadings and documents on file, and such other evidence and argument as may be presented at the hearing on this Motion.

Dated: February 15, 2021

Respectfully submitted,
SHOOK, HARDY & BACON L.L.P.

By: */s/ Amir M. Nassihi*
     AMIR M. NASSIHI

Attorneys for Defendant
SCHELL & KAMPETER, INC. d/b/a
DIAMOND PET FOODS  (also improperly
named as Diamond Pet Foods Inc.)

1  SHOOK HARDY & BACON L.L.P.
   AMIR NASSIHI (SBN 235936)
2  anassihi@shb.com
   M. KEVIN UNDERHILL (SBN 208211)
3  kunderhill@shb.com
   One Montgomery, Suite 2600
4  San Francisco, CA 94104
   Telephone: 415.544.1900
5  Facsimile: 415.391.0281

6  SHOOK HARDY & BACON L.L.P.
   STEVEN D. SODEN (admitted *pro hac vice*)
7  ssoden@shb.com
   2555 Grand Boulevard
8  Kansas City, MO 64108
   Telephone: 816.474.6550
9  Facsimile: 816.421.5547

10 *Attorneys for Defendant*
   SCHELL & KAMPETER, INC. d/b/a
11 DIAMOND PET FOODS
   (also improperly named as Diamond Pet Foods Inc.)

12

13                 UNITED STATES DISTRICT COURT

14               EASTERN DISTRICT OF CALIFORNIA

15 RICHARD DAVID CLASSICK, JR.,               Case No. 2:18-cv-02344-JAM-AC
   individually and on behalf of all others similarly
16 situated,
                                              **DEFENDANT'S MEMORANDUM OF**
17              Plaintiff,                     **POINTS AND AUTHORITIES IN**
                                              **SUPPORT OF MOTION TO DISMISS**
18 v.                                         **PLAINTIFF'S FOURTH AMENDED**
                                              **CLASS ACTION COMPLAINT**
19 SCHELL & KAMPETER, INC. d/b/a
   DIAMOND PET FOODS, and DIAMOND PET         Date: April 20, 2021
20 FOODS INC.,                                Time: 1:30 p.m.
                                              Dept: Courtroom 6
21              Defendants.
                                              Initial complaint filed Aug. 28, 2018
22
                                              Amended complaints filed Sept. 5, 2018; Oct.
23                                            18, 2018; Apr. 9, 2019; and Jan. 19, 2021

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

PROCEDURAL HISTORY AND FACTS ALLEGED ........................................... 1

ARGUMENT .......................................................................................................... 3

I.      Classick does not adequately plead actual or reasonable reliance. .................... 4

      A.      Classick has only identified a limited set of representations. ................................ 4

      B.      At least some of the claims Classick identifies are non-actionable puffery, and he does not allege the others are inherently false. .................................... 5

      C.      Classick has not alleged a "concealment" claim with particularity. ...................... 7

            1.      Classick does not allege a material health risk with particularity. .............. 8

            2.      A reasonable consumer could not take a "zero-tolerance" approach. ...... 10

II.      The negligent-misrepresentation claim would also fail for other reasons. ....................... 11

III.      Classick's CLRA claim also fails because he does not allege a direct transaction. ......... 14

      A.      California courts have repeatedly held a direct transaction is required. ............... 14

      B.      This Court should also follow the state decisions. ................................................ 15

CONCLUSION ..................................................................................................... 15

MEMO ISO MOTION TO DISMISS 4AC
CASE NO. 2:18-CV-02344-JAM-AC

# TABLE OF AUTHORITIES

**Cases**................................................................................................................**Page(s)**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................3

*Ashley County v. Pfizer*,
 552 F.3d 659 (8th Cir. 2009) .................................................................15

*Bardin v. DaimlerChrysler Corp.*,
 136 Cal. App. 4th 1255 (2006) ...........................................................8, 10

*Beasley v. Lucky Stores, Inc.*,
 400 F. Supp. 3d 942 (N.D. Cal. 2019) ......................................................8

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
 945 F.3d 1225 (9th Cir. 2019) ......................................................4, 8, 10

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................3

*Burr v. Sherwin Williams Co.*,
 42 Cal. 2d 682 (1954) .............................................................................4

*Burris Chem., Inc. v. USX Corp.*,
 10 F.3d 243 (4th Cir. 1993) ...................................................................15

*Chamberlan v. Ford Motor Co.*,
 No. C 03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) ...........15

*Cirulli v. Hyundai Motor Co.*,
 No. SACV 08-0854 AG, 2009 WL 4288367 (C.D. Cal. Nov. 9, 2009) ........15

*Clemens v. DaimlerChrysler Corp.*,
 534 F.3d 1017 (9th Cir. 2008) ...............................................................13

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.*,
 173 F.3d 725 (9th Cir. 1999) ...................................................................5

*Combs v. Int'l Ins. Co.*,
 354 F.3d 568 (6th Cir. 2004) .................................................................15

*Consumer Advocates v. Echostar Satellite Corp.*,
 113 Cal. App. 4th 1351 (2003) .................................................................6

*Crystal Springs Upland School v. Fieldturf USA, Inc.*,
 219 F. Supp. 3d 962 (2016) ...................................................................13

*Daugherty v. American Honda Motor Co., Inc.*,
 144 Cal. App. 4th 824 (2006) ..................................................................8

*Davidson v. Apple, Inc.*,
No. 16-CV-4942-LHK, 2017 WL 3149305 (N.D. Cal. July 25, 2017) ........................................13

*Day & Zimmermann, Inc. v. Challoner*,
423 U.S. 3 (1975) ..............................................................................................................................13

*Dayton v. Peck, Stow & Wilcox Co.*,
739 F.2d 690 (1st Cir. 1984) .............................................................................................................15

*Del Webb Communities Inc. v. Partington*,
652 F.3d 1145 (9th Cir. 2011) ..........................................................................................................13

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ...........................................................................................................4

*Figy v. Frito-Lay N. Am., Inc.*,
67 F. Supp. 3d 1075 (N.D. Cal. 2014) ................................................................................................7

*Fulford v. Logitech, Inc.*,
No. C-08-2041 MMC, 2008 WL 4914416 (N.D. Cal. Nov. 14, 2008) .............................................15

*Green v. Canidae Corp.*,
No. CV 09-0486-GAF, 2009 WL 9421226 (C.D. Cal. June 9, 2009) ...........................................14, 15

*Grossman v. Schell & Kampeter, Inc.*,
No. 2:18-cv-02344, 2019 WL 1298997 (E.D. Cal. Mar. 20, 2019).............................................1, 4, 5

*H.L. Hayden Co. of N.Y. v. Siemens Medical Sys., Inc.*,
879 F.2d 1005 (2d Cir. 1989) ...........................................................................................................15

*Hardage Hotels X, LLC v. First Co.*,
No. D053980, 2010 WL 1512138 (Cal. Ct. App. Apr. 16, 2010) .......................................................4

*Hernandez v. FCA US LLC*,
No. 3:19-cv-1872, 2020 WL 4732061 (S.D. Cal. Aug. 14, 2020).....................................................13

*Hilton v. Apple Inc.*,
No. CV 13-7674 GAF, 2014 WL 10435005 (C.D. Cal. Apr. 18, 2014) .............................................7

*Home Valu, Inc. v. Pep Boys*,
213 F.3d 960 (7th Cir. 2000) ............................................................................................................15

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*,
No. 18-ML02814-AB, 2020 WL 5267567 (C.D. Cal. Sept. 2, 2020) ...............................................13

*In re Seagate Tech. LLC Litig.*,
233 F. Supp. 3d 776 (N.D. Cal. 2017) ................................................................................................6

*Kas v. Mercedes-Benz USA, LLC*,
No. CV 111032-GHK-PJWX, 2012 WL 12886203 (C.D. Cal. Jan. 19, 2012) ..............................15

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................................3

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ..........................................................................................7

*Loeb v. Champion Petfoods USA Inc.*,
    359 F. Supp. 3d 597 (E.D. Wis. 2019)..........................................................................10

*Lucido v. Nestle Purina Petcare Co.*,
    217 F. Supp. 3d 1098 (2016) ........................................................................................10

*McGee v. S-L Snacks National*,
    982 F.3d 700 (9th Cir. 2020) ................................................................................. *passim*

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ........................................................................................9

*Morris v. Farmers Ins. Exch.*,
    No. B188081, 2006 WL 3823522 (Cal. Ct. App. Dec. 28, 2006) ..................................14

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ........................................................................................5

*Nickerson v. Goodyear Tire and Rubber Corp.*,
    No. 8:20-cv-00060-JLS-JDE, 2020 WL 4937561 (C.D. Cal. June 3, 2020) ..................4

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ..........................................................................................6

*Rhynes v. Branick Mfg. Corp.*,
    629 F.2d 409 (5th Cir. 1980) ........................................................................................15

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    129 Cal. Rptr. 2d 682 (Cal. Ct. App. 2003)..................................................................12

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ..................................................................................................12

*Schauer v. Mandarin Gems of Cal., Inc.*,
    125 Cal. App. 4th 949 (2005) ......................................................................................14

*Shamsian v. Atlantic Richfield Co.*,
    107 Cal. App. 4th 967 (2003) ..................................................................................4, 11

*Shin v. Campbell Soup Co.*,
    No. CV 17-1082-DMG, 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) .........................11

*SI 59 LLC v. Variel Warner Ventures, LLC*,
    29 Cal. App. 5th 146 (2018) ........................................................................................11

*Simpson v. Champion Petfoods USA, Inc.*,
   397 F. Supp. 3d 952 (E.D. Ky. 2019) .........................................................................10

*Sims v. Kia Motors Am., Inc.*,
   No. SACV 13-1791-AGD-FMX, 2014 WL 12558251 (C.D. Cal. Oct. 8, 2014) ...........................4

*Song v. Champion Petfoods USA, Inc.*,
   No. 18-CV-3205-PJS, 2020 WL 7624861 (D. Minn. Dec. 22, 2020) ...............................6

*Sonneveldt v. Mazda Motor of Am., Inc.*,
   No. 8:19-cv-01298-JLS-KES, 2021 WL 62502 (C.D. Cal. Jan. 4, 2021) ...........................6, 11, 13

*Southern California Gas Leak Cases*,
   7 Cal. 5th 391 (2019) ...................................................................................12

*Taylor v. Phelan*,
   9 F.3d 882 (10th Cir. 1993) .............................................................................15

*Thayer v. Benjamin Franklin Plumbing*,
   No. A129201, 2011 WL 5056277 (Cal. Ct. App. Oct. 25, 2011) .................................14

*Vega v. CarMax Auto Superstores Cal., LLC*,
   No. B278249, 2018 WL 3216347 (Cal. Ct. App. July 2, 2018) ..................................14

*Vess v. Ciba-Geigy Corp.*
   317 F.3d 1097 (9th Cir. 2003) ...........................................................................7

*Vitt v. Apple Computer, Inc.*,
   469 F. App'x 605 (9th Cir. 2012) .......................................................................6

*Weaver v. Champion Petfoods USA Inc.*,
   No. 18-cv-1996, 2020 WL 3847248 (E.D. Wis. July 8, 2020) ..................................11

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002) .............................................................................15

*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135 (1986) .............................................................................4

*Wilson v. Century 21 Great Western Realty*,
   15 Cal. App. 4th 298 (1993) .............................................................................11

*Zarinebaf v. Champion Petfoods USA, Inc.*,
   No. 18-C-6951, 2019 WL 3555383 (N.D. Ill. July 30, 2019) ..................................6

**Statutes**

Cal. Civ. Code § 1710(2) ...................................................................................11

Cal. Civ. Code § 1770(a) ...................................................................................13

Cal. Civ. Code § 1780(a) ..................................................................................................14

**Other Authorities**

*Draft Guidance for Industry #245, Hazard Analysis and Risk-Based Preventive Controls for Food for Animals* at p. 48 (Jan. 2018) (Ex. A to RJN) ...........................................3, 8

MEMO ISO MOTION TO DISMISS 4AC
CASE NO. 2:18-CV-02344-JAM-AC

**INTRODUCTION**

Richard Classick, Jr., claims Diamond Pet Foods misled him by selling dog food that contained potentially harmful substances. His fourth amended complaint asserts claims for negligent misrepresentation, violation of the CLRA, and breach of express warranty. All three claims fail.

First, Classick has not alleged facts showing he reasonably relied on any representations, omissions, or promises by Diamond. He alleges the substances "can be" dangerous to pets over time, but still pleads no facts to show that the risk of injury is actually a reasonable concern here. Instead, he alleges that the mere presence of these substances at any level would be material to a reasonable consumer. In fact, reasonable consumers understand that no product is entirely pure, and would not expect a "zero tolerance" standard that no pet-food manufacturer—and no human-food manufacturer—could meet (and one that FDA does not expect them to meet).

Second, the negligent-misrepresentation claim fails because Classick has not alleged an inherently false statement, and because it is barred by the economic-loss rule. The fraud exception *Robinson Helicopter* created applies only to "affirmative *intentional* misrepresentations." A negligent-misrepresentation claim does not "sound in fraud" for purposes of the economic-loss rule because it does not require proof of intent.

Finally, Classick's CLRA claim also fails because he does not allege he entered into a transaction with Diamond, but rather with an unrelated third party (Amazon). The CLRA requires a direct transaction between buyer and seller, which Classick does not allege existed here. For that reason as well, the Court should dismiss the complaint.

**PROCEDURAL HISTORY AND FACTS ALLEGED**

Martin Grossman and Richard Classick filed an initial complaint against Schell & Kampeter, Inc. (d/b/a Diamond Pet Foods) in August 2018, and two amended complaints quickly followed. *See* ECF 1, 4, 9. Diamond moved to dismiss the second amended complaint. This Court dismissed Grossman's claims for lack of jurisdiction, and otherwise granted the motion in part. Order of Mar. 20, 2019 (ECF 23); *Grossman v. Schell & Kampeter, Inc.*, No. 2:18-cv-02344, 2019 WL 1298997 (E.D. Cal. Mar. 20, 2019). The Court declined to dismiss the fraud claims entirely, finding some of the affirmative statements alleged were more than puffery. But it also held that Plaintiffs only

alleged reliance on "the nutritional claims and labels they saw on the packaging and on Amazon.com and Chewy.com," not statements on Diamond's website or in other marketing materials. ECF 23 at 10–11. The Court declined at that time to apply the economic-loss rule to the negligent-misrepresentation claim. *Id.* at 13–14. Classick filed a third amended complaint in April 2019. ECF 24. After the equitable claims were dismissed (ECF 32), Diamond filed an answer in August 2019. Classick filed his fourth amended complaint (4AC) in January 2021. ECF 67.

Diamond makes and sells dog food under the brand name "Taste of the Wild." 4AC ¶¶ 20–23. The products at issue are five varieties of that food. *Id.* ¶ 4 n.1. Classick bought one of these, Grain Free High Prairie Canine Formula with Roasted Bison and Roasted Venison, every 30 days from Amazon starting sometime in 2017 and ending on August 1, 2018. *Id.* at ¶ 18. He alleges that when subscribing, he relied on "the nutritional claims and labels on the packaging and on the Amazon.com website," but never specifies which ones. *Id.* Whenever the word "relied" or "reliance" appears in connection with Classick himself, in fact, the allegations are generic. *See id.* ¶¶ 23, 120, 175, 178, 202. Classick does not say which representations, if any, he relied on. *See id.* ¶¶ 32–36.

Classick also alleges that "the packaging and advertising" of the dog foods "fail to disclose they contain *or are at a risk of containing* any level of Heavy Metals, BPA, pesticides, acrylamide, any other undesirable toxins, chemicals, or contaminants, or non-fresh ingredients." 4AC ¶ 36 (emphasis added). Similarly, he asserts that reasonable consumers seeing Diamond's marketing would expect the product to be completely free of "heavy metals, pesticides, acrylamide, BPA," or any other "undesirable toxins, chemicals, or contaminants" (but never alleges *he* expected this). *Id.* ¶¶ 8, 10, 100. The 4AC asserts that samples of Taste of the Wild were tested at some point (it does not say when) and were found to contain arsenic, BPA, cadmium, mercury, lead, pesticides, and acrylamide at various levels (expressed in micrograms per kilogram, which is the same as "parts per billion" or "ppb"). *Id.* ¶ 101. The levels for the varieties Classick bought were allegedly 155.8, 276, 59.7, 16.7, 394.5, 460, and 86.5 ppb respectively. *Id.* Classick does not (and cannot) allege that these levels exceed FDA permitted levels for pet food, or that they are harmful to dogs, even over time.

Though the complaint implies that the presence of *any* amount of these substances in dog food would necessarily be unsafe, in fact it concedes otherwise. Classick concedes, for example, that

MEMO ISO MOTION TO DISMISS 4AC
CASE NO. 2:18-CV-02344-JAM-AC

some level of arsenic is acceptable even in food and water for human consumption—even in baby food. *See* 4AC ¶ 133 (saying FDA is "considering" limiting arsenic in baby food to 100 ppb). With regard to animals, he alleges only that levels above 250 ppb in water—50 percent higher than the level allegedly found in Taste of the Wild—are considered even "*potentially* toxic." *Id.* ¶ 134. And arsenic is the only substance for which the complaint provides even this much support. For lead, it asserts that the level in the food sample was "higher ... than [in] most homes in Flint, Michigan," but those tests involved water, not food. *Id.* ¶ 137; *see also id.* ¶ 45 (alleging bottled water cannot contain more than 5 ppb of lead or 10 ppb of arsenic). The complaint offers no context with regard to acceptable levels of any of the other substances, alleging only that they *may* be harmful at some level. *Id.* ¶¶ 138–42. Similarly, though Classick seeks a disclaimer stating that all these substances could "accumulate over time in [a] dog's body to the point where poisoning, injury, and/or disease can occur" (4AC ¶¶ 6, 148), he has not pleaded any facts regarding the duration or level of exposure that would be necessary (*id.* ¶¶ 45, 136). He does not allege his dog ever suffered any ill effects.

Pet food is regulated by the Food and Drug Administration. As FDA has noted, chemical substances in food "are not always considered hazards and their occurrence may be unavoidable." *Draft Guidance for Industry #245*, *Hazard Analysis and Risk-Based Preventive Controls for Food for Animals* at p. 48 (Jan. 2018) (Ex. A to RJN). Whether a substance is a "hazard" depends on "[t]he particular chemical, and its level in the animal food...." *Id.* "Whether an animal develops an injury or illness as a result of exposure to minerals (including heavy metals) depends upon the species, level of the mineral in the animal food, and frequency of exposure." *Id.* at p. 50.

## ARGUMENT

A complaint must allege facts setting forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Lables, conclusions, and recitations of legal elements are not "facts" that must be taken as true. *Iqbal*, 556 U.S. at 678–79. Claims sounding in fraud must be pleaded with particularity, including claims based on alleged omissions. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009). A plaintiff alleging fraud by omission must plead what was omitted and where it should have been revealed, and also provide representative samples of advertisements or other representations the

1  plaintiff relied on that failed to include the omitted information. *Sims v. Kia Motors Am., Inc.*, No.

2  SACV 13-1791-AGD-FMX, 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014).

3  **I.       Classick does not adequately plead actual or reasonable reliance.**

4          Classick asserts claims for negligent misrepresentation, CLRA, and breach of express

5  warranty. All these claims fail because he has not pleaded facts showing actual and reasonable

6  reliance. Reasonable reliance is a required element of any negligent-misrepresentation claim and of a

7  CLRA claim that sounds in fraud. *See Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967,

8  983 (2003) (negligent misrepresentation); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350,

9  1366–67 (2010) (CLRA). As discussed below, since this Court's earlier decision, the Ninth Circuit

10  has reinforced the importance of *plausibly* pleading the reasonable-reliance requirement in

11  California claims. *See, e.g.*, *McGee v. S-L Snacks National*, 982 F.3d 700 (9th Cir. 2020); *Becerra v.*

12  *Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019).

13          Reasonable reliance is also required for express-warranty claims if, as here, the buyer and

14  seller were not in privity. *See Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695–97 (1954);

15  *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986); *Hardage Hotels X, LLC v.*

16  *First Co.*, No. D053980, 2010 WL 1512138, at *7–14 (Cal. Ct. App. Apr. 16, 2010) (collecting

17  cases; holding reliance required if no privity); *see also Nickerson v. Goodyear Tire and Rubber*

18  *Corp.*, No. 8:20-cv-00060-JLS-JDE, 2020 WL 4937561, at *5 (C.D. Cal. June 3, 2020).

19          **A.       Classick has only identified a limited set of representations.**

20          In its previous order, the Court held that Plaintiffs only alleged reliance on "the nutritional

21  claims and labels they saw on the packaging and on Amazon.com," and not (for example) statements

22  on Diamond's website or in other marketing materials. *Grossman*, 2019 WL 1298997, at *4–5

23  (citing SAC ¶¶ 18, 20, 26, 34–36, 39). The same is true of the new complaint. *See* 4AC ¶¶ 18, 19,

24  24, 31–35, 36. It defines "Marketing" and "Claims" collectively to include "Defendants' promises,

25  warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising" (*id.* ¶ 4),

26  and uses those terms throughout. *Id.* ¶¶ 5–14, 27–29, 80–98, 99–122, 150–55, 159–60, 167, 188. The

27  4AC still refers to Diamond's website and other marketing materials on which Classick does not

28  allege he relied, but those allegations should be disregarded. *See, e.g.*, *id.* ¶¶ 4, 25, 27–29, 33, 36.

Classick has not identified what, if anything, he saw on Amazon.com other than images or representations on the product packaging itself. In the 4AC he has simply added conclusory references to "statements on Amazon.com" or "labels, packaging, and advertising on Amazon.com" whenever Amazon is mentioned. *See, e.g.*, 4AC ¶¶ 18, 24, 158, 172, 175–76, 184, 193. There are no examples or even descriptions of anything that might have appeared there other than the product packaging. Thus, Classick is at best alleging reliance on claims and labels that actually appeared on the packages of High Prairie Canine Formula with Roasted Bison and Roasted Venison, the product he bought from Amazon.com. *Id.* ¶ 18. The claims and labels at issue are therefore the following:

- "The balanced diet that nature intended" (4AC ¶ 32(a))

- "The best nutrition available today" (*id.* ¶ 34(a))

- "Probiotics processed under strict human-grade standards to ensure purity" (*id.* ¶ 35)

- "Grain-free formula ... provides ... nutrition for optimal health and vitality" (*id.*)

- "Antioxidants help ... protect overall good health" and "help support optimal cellular health"; and omega fatty acids "help maintain ... overall good health" and "the sleek condition of good health" (*id.*)

**B.      At least some of the claims Classick identifies are non-actionable puffery, and he does not allege the others are inherently false.**

In its previous order, the Court held that some of these claims "go beyond mere puffery, into assertions of fact," but did not make clear which ones. 2019 WL 1298997, at *4. At a minimum, the first two claims in Classick's list—"the balanced diet that nature intended" and "the best nutrition available today"—are non-actionable puffery.

To be actionable, a statement must be specific enough to be tested and proven or disproven:

> The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions.... Thus, a statement that is quantifiable, that makes a claim as to the "specific or absolute characteristics of a product," may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.

*Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (internal quotations and citations omitted). The statement must assert a fact that is "quantifiable" or otherwise "capable of being proved false." *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725,

731 (9th Cir. 1999); *see, e.g., Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (statements that a product or service will "help [one] grow," "work best," or provide "best practices" were "impervious to being 'quantifiable,' and thus are non-actionable puffery."); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) ("50 channels" and "7 day schedule" were actionable; "crystal clear" and "CD quality" were not).

Here, at least the first two claims on the list above are puffery. What "nature intended," for example, could not be objectively tested. *See Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205-PJS, 2020 WL 7624861, at *10 (D. Minn. Dec. 22, 2020) (holding phrase "nourish as nature intended" was puffery because it is "impossible to draw conclusions about what, exactly, 'nature intends.'"); *Zarinebaf v. Champion Petfoods USA, Inc.*, No. 18-C-6951, 2019 WL 3555383, at *7 (N.D. Ill. July 30, 2019) (same). Similarly, "the best nutrition available today" is no more quantifiable than a promise that a service will "work best" or constitute "best practices." *Prager Univ.*, 951 F.3d at 1000; *see also Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (holding statements like "high performance" and "ideal student laptop" were puffery). Claims that a substance or formula "helps promote" or "helps support" "good health" or "optimal health" also should not be actionable. *See* 4AC ¶ 35. Classick does not allege what standards might be applied to test these claims. To the extent he argues they misrepresent the food as "safe," general representations of safety are routinely held to be puffery. *See, e.g., Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2021 WL 62502, at *7 (C.D. Cal. Jan. 4, 2021) ("representations about quality and safety amount to 'mere puffery,' which is not actionable); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 792–94 (N.D. Cal. 2017) ("Examples of terms that consistently qualify as puffery include 'quality,' 'reliability,' 'performance,' and 'safely.'"). The only claim on the list that might go beyond puffery is the claim that Diamond's "K9 Strain Probiotics are developed specifically for dogs and processed under strict human-grade standards to ensure purity." 4AC ¶ 35. The reference to "human-grade standards" at least suggests there is an objective standard by which this claim could be tested (though Classick does not allege what it is).

But Classick has another problem with this and the other claims in paragraph 35: he does not actually allege they are *false*. Those claims do not relate to the food as a whole, only to particular

1    ingredients. Classick never alleges, for example, that the K9 Strain Probiotics in Taste of the Wild

2    were not "developed specifically for dogs" or "processed under strict human-grade standards."

3    Similarly, the other claims have to do with "antioxidants," "omega fatty acids," and the "grain-free

4    formula," not the product as a whole, and Classick never alleges these particular claims are *false*

5    (*e.g.*, that antioxidants do not help promote good health). Because a plaintiff must plead with

6    particularity "what is false or misleading about a statement, and why it is false" (*Vess v. Ciba-Geigy

7    Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)), as well as the "exact terms" of an express

8    warranty, these allegations fail. *See, e.g.*, *Hilton v. Apple Inc.*, No. CV 13-7674 GAF, 2014 WL

9    10435005, at *5 (C.D. Cal. Apr. 18, 2014) (dismissing claim where plaintiff did not allege facts

10   explaining why it was false to call the iPhone "an innovative technological marvel"); *Figy v. Frito-

11   Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1089–90 (N.D. Cal. 2014) ("It is insufficient to simply assert,

12   no matter how foreign or synthetic-sounding an ingredient's name might be, that an ingredient is

13   unnatural.... Plaintiffs must plead why [it is] unnatural.").

14       **C.    Classick has not alleged a "concealment" claim with particularity.**

15       Classick's claims also fail to the extent he claims to have reasonably relied on an alleged

16   nondisclosure. A plaintiff bringing a "concealment" claim must show that the defendant had a duty

17   to disclose. Under California law, a duty to disclose may exist if (1) there is a fiduciary relationship;

18   (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the

19   defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial

20   representations to the plaintiff from which it omitted material facts (representations that were true

21   but incomplete). *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). Here, Classick does not

22   allege a fiduciary relationship or active concealment. His efforts to allege the other theories fail.

23       To begin with, Classick cannot have been misled by partial representations he did not see or

24   hear. The 4AC specifically alleges that the claims in paragraphs 32 and 34 appeared on "all" the dog

25   food varieties at issue, but does not do so for paragraph 35. (For that matter, one of the paragraph 35

26   claims refers to "real and smoked salmon" as an ingredient, but Classick bought the variety with

27   "roasted bison and venison," not salmon, and does not allege all varieties contain salmon.) He could

28   not have relied on or been misled by the packaging or labeling of a product he did not buy, and he

only bought one kind of dog food. *See Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 960 (N.D. Cal. 2019) (holding plaintiff had not sufficiently alleged facts connecting "the '0g trans fat' statements and his decision to purchase Coffee-mate."). Because the statements in paragraphs 32 and 34 are puffery, and because Classick does not specifically allege reliance on the statements in paragraph 35, none of those statements can support his claims.

Beyond that, Classick has not alleged facts showing his claimed reliance on Diamond's failure to disclose additional facts, under any theory, would have been reasonable. "[T]o be actionable, [an] omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was [otherwise] obliged to disclose." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). And "[i]n order to be deceived" by an omission, a consumer "must have had an expectation or an assumption" about the product. *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006). Further, the consumer must plausibly allege an expectation or assumption that was reasonable, as recent Ninth Circuit cases have emphasized. *See McGee*, 982 F.3d at 704–10 (holding plaintiff had not plausibly alleged injury reasonably caused by failure to disclose presence of trans fat in food); *Becerra*, 945 F.3d at 1228–31 (holding consumer's claimed assumption that "diet" soda would necessarily assist in weight loss was not reasonable). Classick's argument here is twofold: (1) a reasonable consumer would not buy the products because they pose a material health risk to dogs, and/or (2) a reasonable consumer would not buy a product that contained even trace amounts of the substances he identifies. *See, e.g.*, 4AC ¶¶ 6; 131–52. He has not adequately pleaded either argument.

### 1.     Classick does not allege a material health risk with particularity.

Though Classick suggests the substances are harmful at any level, his own allegations show that is not true. For example, he alleges that FDA and EPA have set "limits" for the level of arsenic, lead, and mercury that are acceptable even in food and water for human consumption. 4AC ¶¶ 44, 45, 46. He does not allege any facts showing that levels *below* those limits would be harmful to humans, much less to animals. As mentioned above, FDA recognizes "[h]eavy metals are naturally occurring" and the existence of risk "depends upon the species, level of the mineral in the animal food, and frequency of exposure." *Animal Food Draft Guidance* (Ex. A to RJN) at 49–50. Similarly,

1   Classick alleges that manufacturers are prohibited from selling only "children's products" that

2   contain BPA, or baby food stored in containers with "*intentionally added* BPA"; he does not allege

3   facts showing very low levels would be harmful to adults or animals. For pesticides, too, EPA's

4   "tolerance varies depending on the substance at issue." 4AC ¶ 81. And he admits that acrylamide is

5   created simply by heating food. *Id*. In short, his allegations fail to state a plausible claim that even

6   the smallest trace level of these substances must necessarily pose a material risk.

7        And, in fact, Classick stops short of actually making that allegation. He alleges instead that

8   "toxins" *can* or *may* "accumulate over time in the dog's body to the point where poisoning, injury,

9   and/or disease can occur." 4AC ¶ 6, 148. Similarly, he alleges only that heavy metals are

10  "potentially" dangerous (*id*. ¶ 39) or that pesticides and BPA "have been linked" to health problems

11  (*id*. ¶¶ 81, 142). The 4AC offers no details regarding the materiality of the level of risk either in

12  general or at the concentrations found in Diamond's dog food. It includes a table alleging the parts

13  per billion found in a sample of the dog food Classick bought (*id*. ¶ 101), but does not actually allege

14  these levels would be harmful, even over time. He also does not allege these levels were *consistent*

15  in the food over time. He does not even consistently allege that the food contained *any* of the

16  substances, repeatedly alleging only that it contained or had "*the risk of* containing" them. *Id*. ¶ 24,

17  36, 38, 54, 64, 65, 73, 77, 79, 84, 87, 89 (emphasis added); *see also id*. at p. 27:9–11 (stating that

18  "the presence of the risk of inclusion" of the substances is material). And, of course, he does not

19  allege that his own dog, or any dog, has ever actually been harmed by eating Diamond's dog food.

20       These allegations are weaker than those the Ninth Circuit rejected in *McGee*, where the

21  plaintiff's alleged injury stemmed from buying popcorn that contained trans fat. 982 F.3d at 704–

22  710. Like Classick, McGee did not allege that the manufacturer made any express representations

23  about safety.[1] *Id*. at 706. Her allegations that she bought the product based on the "natural

24  assumption" or expectation that food necessarily would not contain "unsafe and unlawful

25  ingredients" failed to state a claim, the court held. *Id*. at 706–08. She had not shown the

26

27  _____

28  [1] That distinguishes this case from *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) where the issue focused on representations that the products were "prescription" pet food, so a reasonable consumer might expect them to have medicinal qualities. *Id*. at 1017–18.

MEMO ISO MOTION TO DISMISS 4AC
                                                      CASE NO. 2:18-CV-02344-JAM-AC

manufacturer misled her into believing that, and the belief was not reasonable in any event. *Id*. To the extent McGee's claim was based on allegations of present or future injury due to the trans fat, the court rejected that as far too speculative. *Id*. at 708–10. Classick's allegations here are just as speculative, and so fail to state a claim. He has not pleaded facts showing that a reasonable consumer would not buy the product because the levels alleged would necessarily pose a material health risk.

### 2.     A reasonable consumer could not take a "zero-tolerance" approach.

As for Classick's theory that reasonable consumers could simply refuse to accept any level of these particular substances in dog food, no matter how low, that theory is "absurd." *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 605 n.7 (E.D. Wis. 2019). If a lawsuit could be viable whenever a product was marketed as beneficial but contained trace amounts of a potentially unhealthy substance, "consumers would have grounds to sue the manufacturer of nearly every product in a typical grocery store." *Id*. As a judge in this circuit held in a case about mycotoxins in dog food, such a theory would "effectively be advocating for a warning on practically all food products because, as Plaintiffs do not dispute, mycotoxins are effectively ubiquitous." *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1110 (2016) (granting summary judgment in part because levels of mycotoxins and heavy metals in dog food were within permitted FDA limits).

Here, Classick's own allegations effectively concede that *some* level of substances like heavy metals, BPA, and acrylamide are unavoidable (as FDA also recognizes). Diamond's labels do not claim its dog food is free of these substances; "any inference to the contrary reads too much into [the] representations." *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 972 (E.D. Ky. 2019) (dismissing similar claims). Again, a consumer cannot be deceived by omissions unless he or she "had an expectation or an assumption" about the product (*Bardin*, 136 Cal. App. 4th at 1275), and the expectation or assumption must have been reasonable (*McGee*, 982 F.3d at 704–710; *Becerra*, 945 F.3d at 1228–31). Otherwise, a consumer cannot reasonably claim to have expected the manufacturer to warn that the expectation or assumption was not correct. That is the case here. "If the mere presence of heavy metals in pet foods made a manufacturer's statements of quality misleading, then [consumer laws] would effectively bar the sale of any pet foods packaged or marketed in a manner that touts their quality. That is nonsensical, of course, as every pet food is

advertised in this way." *Weaver v. Champion Petfoods USA Inc.,* 2020 WL 3847248, at *3 (E.D. Wis. July 8, 2020); *see also Shin v. Campbell Soup Co.*, No. CV 17-1082-DMG, 2017 WL 3534991, at *4 (C.D. Cal. Aug. 9, 2017) (holding true statements about sodium and fat would not cause a reasonable consumer to believe that "the products are 'healthy'). This theory fails because—as *McGee* also shows—a reasonable consumer could not expect any product to be completely free of potentially harmful substances. *See McGee*, 982 F.3d at 703, 708–09 (finding allegations that there is "no safe level" of trans fat and so consuming it "in *any* quantity … substantially increases the risk" of injury did not state a claim). For that reason, too, Classick has not pleaded facts showing he actually and reasonably relied on anything Diamond said or did not say.

## II.    The negligent-misrepresentation claim would also fail for other reasons.

A negligent-misrepresentation claim requires a false statement of a past or existing material fact." *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 983–84 (2003). An *implied* assertion or representation is "not enough." *Wilson v. Century 21 Great Western Realty*, 15 Cal. App. 4th 298, 306 (1993); Cal. Civ. Code § 1710(2) (defining negligent misrepresentation as the "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."); *see also Sonneveldt*, 2021 WL 62502, at *8 (same holding). There is no such thing as a claim of "negligent omission" or "negligent concealment." A plaintiff must allege a representation of fact that is inherently false, as well as facts showing why the defendant reasonably should have known it was false when it was made. *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 155 (2018). Classick's claim fails for at least two reasons.

First, the 4AC contains no facts showing Diamond reasonably should have known any representation was false at the time it was made. As shown above, Classick has not alleged *any* representation that was inherently false, only partial representations that allegedly implied the product was "safe" or "pure" or the like. Implied assertions are not enough. *Wilson*, 15 Cal. App. 4th at 306. Even setting that aside, Classick alleges no facts showing Diamond knew or should have known about the allegedly high levels of "contaminants" in its products **during 2017 or 2018**, when Classick was buying its dog food. The only *facts* pleaded in that regard are those in the table of test results (4AC ¶ 101), but Classick does not allege when those tests were done, much less that

Diamond knew the results at the time of sale. Otherwise, the 4AC includes only conclusory assertions that Diamond knew or should have known "[a]t all times during the Class Period...." 4AC ¶¶ 37, 56, 75, 80, 91. Conclusory assertions are not entitled to the presumption of truth.

Second, the negligent-misrepresentation claims would still be barred by the economic-loss rule. After this Court's ruling on the SAC, the California Supreme Court reaffirmed that "liability in negligence for purely economic losses is 'the exception, not the rule' under our precedents." *Southern California Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019) (holding businesses could not bring negligence claim against utility for purely economic loss). The "economic loss rule," that is, bars most tort claims between contracting parties, limiting the plaintiff to the relevant contract (or warranty) remedies. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988–89 (2004). In *Robinson*, the court created an exception, holding that fraud claims can proceed if they involve "affirmative intentional misrepresentations" that are independent of the alleged breach. *Robinson*, 34 Cal. 4th at 991; *see id*. at 993 (emphasizing that this exception is "narrow in scope").

But a negligent-misrepresentation claim, by definition, alleges the defendant made a false statement *unintentionally*. It follows that the narrow *Robinson* exception does not apply. In *Robinson* itself, the Court of Appeal had held that the rule barred the plaintiff's negligent-misrepresentation claims. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 129 Cal. Rptr. 2d 682, 699 & n.18, 701 (Cal. Ct. App. 2003). The Supreme Court did not address that holding specifically, but it did hold that only claims based on "affirmative intentional misrepresentations" fell under the exception it was creating (*id*. at 991), and it distinguished between negligent and intentional conduct:

> [I]t is worth noting that the rule's development in the context of product liability claims and its extension to claims for negligent breach of contract were not mere fortuities. *Dealing with affirmative acts of fraud and misrepresentation raises different policy concerns than those raised by negligence* or strict liability claims.... Robinson's claims are based on Dana's intentional and affirmative misrepresentations that risked physical harm to persons.... *The economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk.*

34 Cal. 4th at 991 n.7 (emphasis added). As this shows, the Court intended to require not just affirmative statements (as opposed to mere omissions), but those made *intentionally*.

No California appellate court has squarely addressed this issue since *Robinson Helicopter*. Federal courts have split, but the majority now hold that the rule does bar negligent-misrepresentation claims. *See, e.g.*, *Sonneveldt*, 2021 WL 62502, at *8–10; *Hernandez v. FCA US LLC*, 2020 WL 4732061, *4 (S.D. Cal. Aug. 14, 2020); *see Crystal Springs Upland School v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 970 n.3 (N.D. Cal. 2016) (noting Ninth Circuit panels have reached opposite conclusions in nonprecedential decisions, and choosing to follow the "better reasoned" decision holding negligent-misrepresentation claims barred). A negligent-misrepresentation claim could be said to involve an affirmative statement, but not one that was made intentionally, and so such a claim necessarily falls outside the *Robinson* exception.

Finally, to the extent state law is uncertain, a federal court in a diversity case must err on the side of the construction that limits liability. It "is not free to engraft onto [the] state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits." *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 74–77 (1938)); *see Del Webb Communities Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (federal court should hesitate to extend state law in the absence of an indication from the state courts or legislature); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023–24 (9th Cir. 2008) (holding federal court was not free to expand state-law liability by broadly construing privity exceptions).[2] Here, the same principle requires interpreting the *Robinson* exception narrowly. *See Davidson v. Apple, Inc.*, No. 16-CV-4942-LHK, 2017 WL 3149305, at *18 (N.D. Cal. July 25, 2017) (holding that where "state

---

[2] Because this doctrine stems from *Erie*, it is not surprising that other circuits also apply it. *See, e.g., Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002) ("[E]ven if we were torn between two competing yet sensible interpretations, … we should opt for the interpretation that restricts liability" until state supreme court decides differently); *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000) ("[F]aced with two equally plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability…."); *Ashley County v. Pfizer*, 552 F.3d 659, 673 (8th Cir. 2009) ("As a federal court construing state law, we are very reluctant" to expand liability when state law is unclear); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004); *Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993); *Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993); *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989); *Dayton v. Peck, Stow & Wilcox Co.*, 739 F.2d 690, 694 (1st Cir. 1984); *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. 1980).

law remains unclear as to whether the economic loss [rule] bars claims for common law fraud, a federal court sitting in diversity should opt for the interpretation that restricts liability, rather than expands it.") (citing cases); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, No. 18-ML02814-AB, 2020 WL 5267567, at *7 (C.D. Cal. Sept. 2, 2020) (applying same principle).

**III.   Classick's CLRA claim also fails because he does not allege a direct transaction.**

**A.     California courts have repeatedly held a direct transaction is required.**

The CLRA declares certain practices to be unlawful if undertaken "by any person in a transaction intended to result or which results" in a sale or lease to a consumer. Cal. Civ. Code § 1770(a). If the consumer was actually harmed by the practice in that transaction, the statute authorizes the consumer to sue "that person...." Cal. Civ. Code § 1780(a). In short, the CLRA requires direct dealings between the consumer and the defendant. *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005); *see also Vega v. CarMax Auto Superstores Cal., LLC*, No. B278249, 2018 WL 3216347, at *1–3 (Cal. Ct. App. July 2, 2018); *Thayer v. Benjamin Franklin Plumbing*, 2011 WL 5056277, at *5 (Cal. Ct. App. Oct. 25, 2011); *Morris v. Farmers Ins. Exch.*, No. B188081, 2006 WL 3823522, at *1 (Cal. Ct. App. Dec. 28, 2006); *Green v. Canidae Corp.*, No. CV 09-0486-GAF, 2009 WL 9421226, at *4 (C.D. Cal. June 9, 2009).

In *Schauer*, the court held that a woman whose husband bought an allegedly overvalued engagement ring could not sue under the CLRA, even though she had obtained the ring in a divorce settlement. 125 Cal. 4th at 955–56, 960. The ex-husband would have been entitled to sue because "it was he who purchased the ring," whereas "[p]laintiff's ownership of the ring *was not acquired as a result of her own consumer transaction with defendant.*" *Id*. at 960 (emphasis added). The wife could seek contract damages if she could prove she was an intended third-party beneficiary of the contract between her husband and the jeweler. *Id*. at 957–59. But she could not sue under the CLRA. *Id*. at 960. *See also Morris v. Farmers Ins. Exch.*, No. B188081, 2006 WL 3823522, at *1, 4–5 (Cal. Ct. App. Dec. 28, 2006) (holding plaintiff who bought used car from third party could not sue insurer or repair shop under CLRA; rejecting plaintiff's efforts to distinguish *Schauer*).

More recently, the Court of Appeal again embraced the *Schauer* holding and analysis. *Vega v. CarMax Auto Superstores Cal., LLC*, No. B278249, 2018 WL 3216347, at *1–3 (Cal. Ct.

July 2, 2018). There, a plaintiff sued CarMax—a third-party reseller unaffiliated with any manufacturer—for misrepresenting and concealing facts about the condition of a Ford Mustang. *Id*. at \*1–2. But he did not buy the Mustang; his mother bought it for him. *Id*. The plaintiff tried to distinguish *Schauer* on the grounds that he had accompanied his mother to the lot and made the decision to buy the car. *Id*. at \*4–5. But the Court of Appeal held this did not make him the "consumer," nor had he engaged in a "transaction" with the defendant. *Id*. at \*8–9. It affirmed the dismissal. *Id*. at \*9. *See also Thayer v. Benjamin Franklin Plumbing*, 2011 WL 5056277, at \*5 (Cal. Ct. App. Oct. 25, 2011) (also applying *Schauer*; holding plaintiff who did not buy from defendants could not bring CLRA claim). Thus, the California Court of Appeal has repeatedly held that a CLRA action can be brought only if there is a direct transaction between the plaintiff and the defendant.

### B.     This Court should also follow the state decisions.

Many district courts in this circuit have reached results consistent with *Schauer. See Kas v. Mercedes-Benz USA, LLC*, No. CV 111032-GHK-PJWX, 2012 WL 12886203, at \*1–2 (C.D. Cal. Jan. 19, 2012); *Cirulli v. Hyundai Motor Co*., No. SACV 08-0854 AG, 2009 WL 4288367, at \*4 (C.D. Cal. Nov. 9, 2009); *Green*, 2009 WL 9421226, at \*4 (holding in dog-food case that "[t]he CLRA does not provide a cause of action for consumers against the supplier of goods and services to a retailer from whom the consumer purchased."); *Fulford v. Logitech, Inc*., No. C-08-2041 MMC, 2008 WL 4914416, at \*1 (N.D. Cal. Nov. 14, 2008) (dismissing CLRA claim because plaintiff failed to allege Logitech "engaged in such acts in the course of a transaction *with him*"; emphasis added).

While other courts have interpreted the CLRA more broadly, those cases typically rely on a single *federal* decision that predated *Schauer*, without addressing the state cases that limit liability to direct transactions. *See Chamberlan v. Ford Motor Co*., No. C 03-2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003). For the same reasons explained above, the *Chamberlan* court's more expansive holding violated the *Erie* principle that federal courts should decline to expand liability where a state's own courts have not yet clearly done so. For the same reasons, this Court should instead adhere to *Schauer* and the other state decisions above, which require a direct transaction.

### CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed in their entirety.

Dated: February 15, 2021

Respectfully submitted,
SHOOK, HARDY & BACON L.L.P.

By: */s/ Amir M. Nassihi*
        Amir M. Nassihi
        Steven D. Soden
        M. Kevin Underhill

Attorneys for Defendant
SCHELL & KAMPETER, INC. d/b/a
DIAMOND PET FOODS  (also improperly
named as Diamond Pet Foods Inc.)