1  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
   Robert K. Shelquist (*Pro Hac Vice*)
2  Rebecca A. Peterson (241858)
   100 South Washington Ave., Suite 2200
3  Minneapolis, MN 55401
   Telephone: 612-339-6900
4  Facsimile: 612-339-0981
   E-mail: rkshelquist@locklaw.com
5          rapeterson@locklaw.com

6  **Attorneys for Plaintiff**

7  [Additional Counsel on Signature Page]

8

9                **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
10

11 RICHARD DAVID CLASSICK, JR.,          Case No. 2:18-cv-02344-JAM-AC
   individually and on behalf of all others
   similarly situations,
12
            Plaintiffs,
13
                                         **PLAINTIFF'S MEMORANDUM IN**
   v.                                    **OPPOSITION TO DEFENDANT'S**
14                                       **MOTION TO DISMISS PLAINTIFF'S**
   SCHELL & KAMPETER, INC. d/b/a         **FOURTH AMENDED CLASS**
15 DIAMOND PET FOODS, and DIAMOND        **ACTION COMPLAINT**
   PET FOODS INC.
16
            Defendants.
17

18

19

20

21

22

23

24

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     SUMMARY OF FACTUAL ALLEGATIONS.......................................1

III.    LEGAL STANDARD............................................................................3

IV.     ARGUMENT ........................................................................................3

      A.      Plaintiff's Claims Are Based On Actionable Misrepresentations...............3

      B.      Rule 9(b) Is Satisfied ................................................................7

            1.      Plaintiff Relied on the "Optimal Health" and
                  "Good Health" Packaging Claims ...................................8

            2.      Plaintiff Alleges Material Misrepresentations and
                  Omissions With Particularity ...........................................9

      C.      Plaintiff Properly Alleges Negligent Misrepresentation...........................11

      D.      The CLRA Does Not Expressly Require Direct Transactions..................13

V.      CONCLUSION....................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Jamba Juice Co.*,
    888 F. Supp. 2d 1000 (N.D. Cal. 2012) ........................................................8, 9

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    No. C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012)..............................9

*Beasley v. Lucky Stores, Inc.*,
    400 F. Supp. 3d 942 (N.D. Cal. 2019) ........................................................8

*Chamberlan v. Ford Motor Co.*,
    No. 03-cv-2628, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) ..................................14

*Corra v. Energizer Holdings, Inc.*,
    962 F. Supp. 2d 1207 (E.D. Cal. 2013)........................................................9

*Cousins v. Lockyer*,
    568 F.3d 1063 (9th Cir. 2009) ........................................................3

*Herron v. Best Buy Stores, L.P.*,
    No. 12-cv-02103, 2014 WL 465906 (E.D. Cal. Feb. 4, 2014) ........................................9

*In re Big Heart Pet Brands Litig.*,
    No. 18-cv-00861, 2019 WL 8266869 (N.D. Cal. Oct. 4, 2019) ......................4, 5, 12, 13

*Johnson v. Nissan N.A., Inc.*,
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ........................................................13

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
    315 F. App'x 603 (9th Cir. 2008) ........................................................13

*Keilholtz v. Superior Fireplace Co.*,
    No. 08-cv-00836, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) ..................................13

*Lucido v. Nestle Purina Petcare Co.*,
    217 F. Supp. 3d 1098 (N.D. Cal. 2016) ........................................................11

*McAdams v. Monier, Inc.*,
    182 Cal. App. 4th 174 (2010) ........................................................14

*McDougal v. Cty. of Imperial*,
    942 F.2d 668 (9th Cir. 1991) ........................................................3

*Prager University v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ........................................................4

*Reitman v. Champion Petfoods USA, Inc.*,
   No. 18-cv-181736, 2019 WL 1670718 (C.D. Cal. Feb. 6, 2019) ..............................4, 12

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004)). ........................................................................................12

*Salazar v. Honest Tea, Inc.*,
   No. 2:13-cv-02318, 2015 WL 75223 (E.D. Cal. Jan. 6, 2015)........................................9

*Schauer v. Mandarin Gems of California*,
   125 Cal. App. 4th 949, 960 (2005) ........................................................................13

*Song v. Champion Petfoods USA*,
   No. 18-cv-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020) .....................................4

*Sonneveldt v. Mazda Motor of America, Inc.*,
   No. 19-cv-01298, 2021 WL 62502 (C.D. Cal. Jan. 4, 2021). ........................................5

*Thayer v. Benjamin Franklin Plumbing*,
   No. A129201, 2011 WL 5056277 (Cal. Ct. App. Oct. 25, 2011)..................................13

*Vega v. CarMax Auto Superstores Cal., LLC*,
   No. B278249, 2018 WL 3216347 (Cal. Ct. App. July 2, 2018) ...................................13

*Williams v. Gerber Prods. Co.*,
   523 F.3d 934 (9th Cir. 2008) .................................................................................3, 4, 5

*Zarinebaf v. Champion Petfoods USA*,
   No. 18-cv-6951, 2019 WL 3555383 (N.D. Ill. July 30, 2019). .....................................4

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ...........................................................4, 7, 10, 11

*Zeiger v. WellPet LLC*,
   No. 17-cv-04056, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) .............................10, 11

Rᴜʟᴇꜱ

Federal Rules of Civil Procedure 12(b)(6)...................................................................3, 4, 11

Federal Rules of Civil Procedure 9 ....................................................................................7

Sᴛᴀᴛᴜᴛᴇꜱ

Cal. Civ. Code § 1770(a) ................................................................................................13

## I.      INTRODUCTION

Before this Court is Defendant Schell & Kampeter, Inc.'s ("Defendant" or "Diamond") third attempt to dismiss Plaintiff's negligent misrepresentation, fraudulent concealment, CLRA, and express warranty claims. Defendant's motion largely repeats arguments already rejected by this Court, claiming yet again that Plaintiff has not alleged reliance and that the representations Plaintiff challenges are mere puffery. Plaintiff's Fourth Amended Complaint ("4AC") has provided more specificity than the prior iterations, not less, and his claims are well pleaded. For these and the foregoing reasons, Defendant's motion should be denied.

## II.     SUMMARY OF FACTUAL ALLEGATIONS

The Dog Food's[1] packaging and advertising is intended to, and does, convey to reasonable consumers like Plaintiff that it possesses certain qualities and characteristics that justify a premium price. ¶4.[2] In fact, the Dog Food contains undisclosed Heavy Metals,[3] pesticides, acrylamide, and/or bisphenol A ("BPA") (collectively, "Contaminants"). ¶¶ 5, 37. Even though the mere inclusion of these Contaminants is material to a reasonable consumer, like Plaintiff and the class members, Defendant's packaging and advertising does not disclose the risk or actual inclusion of these Contaminants or that they can accumulate over time when a dog repeatedly consumes the same foods. ¶¶6, 10. Without such a disclosure, consumers have no way to ascertain the true ingredients and quality of the Dog Food.  ¶¶7-9. Instead, and as Defendant intended,

---

[1] The term "Dog Food" refers to: Taste of the Wild® Grain Free High Prairie Canine Formula Roasted Bison and Roasted Venison Dry Dog Food; Taste of the Wild® Grain Free Pacific Stream Canine Formula Smoked Salmon Dry Dog Food; and Taste of the Wild® Prairie Puppy Formula Grain-Free. Arsenic, lead, mercury, and cadmium are collectively referred to as "Heavy Metals."

[2] All ¶ references are to the Fourth Amended Complaint filed on January 19, 2021 ("4AC"). Dkt. 67.

[3] The term "Heavy Metals" includes arsenic, lead, mercury, and cadmium. ¶5 n.2.

consumers reasonably relied on the Dog Food's misleading and deceptive packaging and advertising. ¶¶7-9. Plaintiff, and other reasonable consumers, are left to focus on Defendant's misrepresentations that its Dog Food provides "the balanced diet that nature intended" and "the best nutrition available today" that helps support "optimal health" and "overall good health" (collectively, the "Packaging Claims"). ¶¶ 32, 34, 35. Prior to purchasing the Dog Food, Plaintiff saw and relied on the Packaging Claims on both the Dog Food's packaging and on the images of the packaging on the Amazon.com website when purchasing the Dog Food. ¶18. Specifically, Plaintiff alleges how the Dog Food packaging depicts animals in the wild, the brand name ("Taste of the Wild"), and Defendant's alleged mission to provide food that is natural and as "the best diet nature intended" pets to eat in the "wild," is "the best nutrition available today," and supposedly manufactured to support "optimal health and vitality," "optimal cellular heath," and "overall good health." ¶¶32, 34, 35.[4]

Defendant's misleading marketing campaign begins with its packaging (described below) and expands in its advertising (also described below), all of which contain misrepresentations and no disclosure that the Dog Food contains, or is at risk of containing, the Contaminants. Defendant knew or should have known about the falsity of the statements because it had exclusive knowledge of the makeup of the Dog Food, supposedly tests *every* product, employs a "rigorous" supplier approval process, and was informed by the Clean Label Project that the Dog Food contained the Contaminants. ¶¶52, 57, 64, 152, 158, 200.  Additionally, Defendant knew or should have known that consumers purchased the Dog Food based on a reasonable expectation that it was

---

[4] The 4AC also added allegations concerning the use of Regrinds by Defendant and that their use contradicted the packaging claims (¶¶91-98) but the motion to dismiss fails to address these allegations.

manufactured to the highest standards preventing the inclusion of the Contaminants, or at a minimum, sufficiently testing for the Contaminants. ¶¶42, 52-53.

## III.    LEGAL STANDARD

A motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is "viewed with disfavor and is rarely granted." *McDougal v. Cty. of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991).[5] This Court must accept as true all of Plaintiff's allegations of material fact, construe them in the light most favorable to him, and not allow Defendant to substitute its own facts or its own interpretation of those facts. *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 937 (9th Cir.) ("*Williams I*"), *opinion amended and superseded on denial of reh'g*, 552 F.3d 934 (9th Cir. 2008) ("*Williams II*"). The complaint need not "contain detailed factual allegations," but only "enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009).

## IV.    ARGUMENT

### A.    Plaintiff's Claims Are Based On Actionable Misrepresentations

"It is not difficult to choose statements, designs, and devices which will not deceive." *Williams*, 552 F.3d at 939 n.3. Yet Defendant's packaging is replete with "deceptive, misleading, unfair, and/or false" representations and omissions designed to extract premium prices from its customers. ¶¶ 3-5, 12-14. The 4AC centers around the three Packaging Claims discussed above. Defendant challenged the actionable nature of these exact Packaging Claims in its first motion to dismiss, Dkt. 13 at 9, and the Court allowed the claims to go forward because,

> [w]hile some of these are closer calls than others, these statements go beyond mere puffery, into assertions of fact. The statements convey that the products are nutritious and safe, and Plaintiffs specifically allege the products do not conform to these facts because they contain heavy metals, pesticides, acrylamide, and/or BPA, which are

---

[5] Here, as throughout, all emphasis is deemed added and citations, footnotes, and internal quotation marks are deemed omitted unless otherwise noted.

1

2

associated with a variety of health risks. These alleged misstatements support Plaintiffs' claims sounding in fraud.

Dkt. 23 at 10-11 (citing *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 851 (N.D. Cal. 2018)

3

("*Zeiger I*")). This ruling has been met with approval by other courts in the Ninth Circuit, *In re*

4

*Big Heart Pet Brands Litig.*, No. 18-cv-00861, 2019 WL 8266869, at *18 (N.D. Cal. Oct. 4, 2019)

5

("*Big Heart*"), and recent decisions cited by Defendant do not command a different outcome

6

today. "The facts of this case … do not amount to the rare situation in which granting a motion to

7

dismiss is appropriate." *Williams II*, 552 F.3d at 939.

8

    The rulings in *Song v. Champion Petfoods USA* and *Zarinebaf v. Champion Petfoods USA*

9

were based on a representation with important distinctions. No. 18-cv-3205, 2020 WL 7624861,

10

at *10 (D. Minn. Dec. 22, 2020); No. 18-cv-6951, 2019 WL 3555383, at *7 (N.D. Ill. July 30,

11

2019). In the *Song* and *Zarinebaf* cases, Champion's dog food promised to "*nourish* as nature

12

intended" whereas Defendant's Dog Food promises a "*balanced diet* as nature intended." The

13

phrase "balanced diet" is not vague and  is measurable when considered in the context of

14

Plaintiff's claims—a reasonable consumer would not consider a "Balanced Diet" to include the

15

Contaminants. ¶¶5-8, 100-103. Additionally, the *Song* and *Zarinebaf* cases were also evaluated

16

under the standards of different states' statutory and common law claims, and the same

17

representations survived a Rule 12(b)(6) challenge under California law. *See generally Reitman*

18

*v. Champion Petfoods USA, Inc.*, No. 18-cv-181736, 2019 WL 1670718 (C.D. Cal. Feb. 6, 2019).

19

    The statements challenged in *Prager University v. Google LLC*, 951 F.3d 991 (9th Cir.

20

2020), are wholly distinguishable from the "Best Nutrition" statement at issue here. In *Prager*,

21

the Ninth Circuit found "YouTube's statements that the platform will 'help [one] grow,' 'discover

22

what works best,' and 'giv[e] [one] tools, insights and best practices' for using YouTube's

23

products [we]re impervious to being 'quantifiable.'" *Id.* at 1000. The phrases "works best" and

24

"best practices" did not refer to any specific attribute of YouTube, such as its interfaces for uploading and downloading videos, its search function, or other feature of the now ubiquitous website. Defendant's Packaging Claim—that its Dog Food offers the "Best Nutrition Available Today"—is directly related to Plaintiff's claim alleging that the Dog Food is "inherently unhealthy and non-nutritious because of the presence of, *inter alia*, arsenic, lead and other heavy metals, and BPA." *Big Heart*, 2019 WL 8266869, at *18; ¶34. That is, the "Best Nutrition" promise relates to a specific and quantifiable characteristic of the Dog Food and "contributes … to the deceptive context of the packaging as a whole." *Williams*, 552 F.3d at 939 n.3.

The vague promise "to get passengers to their destinations 'swiftly and safely'" in *Sonneveldt v. Mazda Motor of America, Inc.* did not relate to the product attributes at issue in that case (water pumps). No. 19-cv-01298, 2021 WL 62502, at *7 (C.D. Cal. Jan. 4, 2021). Here, the final Packaging Claims relate to specific representations about Defendant's ingredients—namely, that the Dog Food contains:

- "Species-Specific Probiotics processed under strict human-grade standards to ensure purity;"

- A "grain-free formula [that] provides your dog with nutrition for optimal health and vitality;"

- "Antioxidants [that] help protect your dog's overall good health … [and] optimal cellular health;"

- An "Omega Fatty Acid Blend … to help maintain … overall good health;" and

- "Real & Smoked Salmon … to help your dog maintain the sleek condition of good health."

¶35.

Defendant concedes that "[t]he reference to 'human-grade standards' at least suggests there is an objective standard by which this claim could be tested." Dkt. 70 at 6. The other Packaging Claims specifically promise "*good*" or "*optimal*" health will be derived from

Defendant's ingredients—grain-free probiotics, antioxidants, omega fatty acids, and salmon. And they are rendered false, misleading, and deceptive by Plaintiff's allegations that these ingredients contain Contaminants that may be *injurious* dogs' health, and thus reasonable consumers would want to be informed that they were, or could be, present in the Dog Food. *See* ¶39 ("heavy metals … pose health risks to dogs"); ¶43 ("Animal exposure to these toxins can cause serious illness."); ¶45 ("Lead is a carcinogen and developmental toxin known to cause health problems."); ¶46 ("Mercury is a known toxin which can damage the cardiovascular system, nervous system, kidneys, and digestive tract in dogs."); ¶47 ("Cadmium has been observed to cause anemia, liver disease, and nerve and brain damage in animals eating or drinking it."); ¶66 ("BPA has been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems."); ¶81 ("acrylamide is a likely carcinogen for humans and a known carcinogen in animals"); ¶81 ("Pesticides have been linked to numerous health problems with animals, such as vomiting, diarrhea, seizures, and death.").

Defendant attempts to split hairs by arguing that the "optimal health" and "good health" Packaging Claims relate only to particular ingredients. Dkt. 70 at 6-7. But Plaintiff alleges, with particularity, why these claims about Defendant's ingredients are false. Defendant knew that the Contaminants "were a real and common risk … yet failed to test for any such ingredients" or "monitor for [Contaminants] in their ingredients." ¶¶38, 65, 83-84, 88. "Consumers lack the scientific knowledge necessary to determine whether the Products do in fact contain … [these] [C]ontaminants *and to know or to ascertain the true ingredients and quality of the Products*." ¶7 (emphasis added). "A reasonable consumer would have relied on Defendants' own warranties, statements, representations, advertising, packaging, labeling, and other marketing *as to the quality, make-up, and included ingredients* of the [] Dog Foods." ¶178 (emphasis added).

Defendant knew this and "knew or should have known they could control the levels of [Contaminants] … *by properly monitoring their ingredients*." ¶¶48-50, 58, 68-69, 83-84 (emphasis added). This level of specificity is all that is required.

Plaintiff alleges that "Defendant[] ha[s] engaged in this long-term advertising campaign to convince potential customers that the [] Dog Foods were pure, healthy, safe for consumption, and did not contain harmful ingredients, such as arsenic and lead." ¶117. The Packaging Claims are "measurable" and sufficiently support these allegations. *Zeiger I*, 304 F. Supp. 3d at 851. Just as Plaintiff's prior complaints satisfied Rule 9, so does the slightly modified iteration before the Court.

## B.      Rule 9(b) Is Satisfied

This Court already held that Plaintiff's allegation of fraud satisfy the "who, what, when, where, and how" requirements of Rule 9(b). Dkt. 23 at 9-10. And so now:

> The [4AC] names [the] plaintiff and defendant (the "who"); alleges when [the] plaintiff began purchasing the products and when [he] stopped (the "when"); specifies the websites from which [the] plaintiff purchased the product and the presence of the claims and packaging information (the "where"); includes, through text and photographs, the claims on the specific products [he] allege are false or misleading (the "what"); and alleges the claims are false or misleading due to the presence of alleged undisclosed [C]ontaminants and that Plaintiff[] would not have purchased the products had [he] known of the presence of those [C]ontaminants (the "how").

*Id.*; ¶¶18-19, 24, 31-36; 38-98; *see also Zeiger I*, 304 F. Supp. 3d at 849 (reaching same conclusion based on similar allegations). Clearly, "Plaintiffs' allegations are sufficient to put [Defendant] on notice of the circumstances giving rise to their claims, and as such, satisfy Rule 9(b)." *Id.* at 850.

1.    *Plaintiff Relied on the "Optimal Health" and "Good Health" Packaging Claims*

In a second attempt to split hairs and circumvent this Court's prior ruling, Defendant argues that Plaintiff's allegations regarding the "Optimal Health" allegations fail because paragraph 35 does not use the word "all." Dkt. 70 at 7. But Plaintiff alleges that he "saw the nutritional claims and labels on the Dog Food's *packaging* and on the Amazon.com website, which he relied on in deciding to purchase the Contaminated Dog Foods," and he alleges in paragraph 35 that "the *packaging* describes the ingredients in the [] Dog Foods as 'processed under strict human-grade standards to ensure purity,' providing 'optimal health and vitality,' supporting 'optimal cellular health' and 'overall good health,' and helpful in maintaining 'the sleek condition of good health.'" ¶¶18, 35 (emphasis added). He also alleges that "*all* of [] Dog Foods' packaging depict the *same* misrepresentations." ¶31 (emphasis added). Moreover, Plaintiff provides images of his purchased diet packaging (Grain Free High Prairie Canine Formula with Roasted Bison and Roasted Venison Dry Dog Food) and alleges it contains the "optimal health" claim – thereby supporting that the challenged Packaging Claims are on the packaging bought by Plaintiff. ¶¶18, 24, 31, 35.[6]

In any event, "[t]he 'critical inquiry [in these cases] seems to be whether there is sufficient similarity between the products purchased and not purchased.'" *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005 (N.D. Cal. 2012). And while Plaintiff did not purchase a Dog Food

---

[6] Defendant points to *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 960 (N.D. Cal. 2019), to argue that Plaintiff does not sufficiently allege reliance. Dkt. 70 at 8. In *Beasley*, the plaintiff conceded at his deposition that he did not know that the offending ingredient (transfats) was harmful when he purchased the products at issue, so the court entered summary judgment. *Id.* Here, the reliance element of Plaintiff's claim is specifically alleged at paragraph 18 of the 4AC in a manner that has already been approved by this Court and must be accepted as true. *See* Dkt. 23 at 11 (denying first motion to dismiss claims based on "affirmative misstatements appearing on the products' packaging or websites of purchase").

diet containing salmon, the point of that particular Packaging Claim is not that it promises "real and smoked salmon." Rather, Grain Free Pacific Stream Canine Formula with Smoked Salmon Dry Dog Food promises, just like the Dog Food diets purchased by Plaintiff, the "sleek condition of *good health*." ¶35. And Plaintiff alleges that he relied on that "good health" promise on the packaging for Dog Food he purchased. ¶18. "That the different [Dog Foods] may ultimately have different ingredients is not dispositive as Plaintiff[] [is] challenging the same basic mislabeling practice across different product flavors." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012). The "good health" claims all relate to Plaintiff's allegations that Defendant knew that heavy metals, BPA, pesticides, and acrylamides "were a real and common risk … yet failed to test for any such ingredients" or "monitor for [these] in their ingredients." 4AC ¶¶38, 65, 83-84, 88. These similarities are sufficient to sustain Plaintiff's claims based on the "good health" Packaging Claim. *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318, 2015 WL 75223, at *7 (E.D. Cal. Jan. 6, 2015); *Herron v. Best Buy Stores, L.P.*, No. 12-cv-02103, 2014 WL 465906, at *6 (E.D. Cal. Feb. 4, 2014); *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1218 (E.D. Cal. 2013); *Astiana*, 2012 WL 2990766, at *13; *Anderson*, 888 F. Supp. 2d at 1006.

### 2.     *Plaintiff Alleges Material Misrepresentations and Omissions With Particularity*

This Court previously held, after reviewing the Second Amended Complaint, that "Plaintiff[] adequately allege[d], and [Defendants] d[id] not seem to refute, that the presence of the alleged contaminants in the products would be material." Dkt. 23 at 12. Nor did Defendant challenge the materiality issue in its second motion to dismiss. Dkt. 27. Those allegations remain substantially unchanged in the 4AC, yet Defendant now argues for the first time, over two years into this litigation, that such allegations "fail to state a plausible claim that even the smallest trace

1   level of these substances must necessarily pose a material risk." Dkt. 70 at 9. But Defendant fails

2   to explain how Plaintiff's allegations, "including [Defendant]'s knowledge of its production and

3   stringent standards," are pleaded with any less "reasonable particularity" than they were the first

4   time. Dkt. 23 at 12 (citing *Zeiger I*, 304 F. Supp. 3d at 852).

5           In fact, Plaintiff's claims are only bolstered by recent decisions from within the Ninth

6   Circuit. Plaintiff alleges "that the [Dog Food] contains Heavy Metals, pesticides, acrylamide,

7   and/or BPA, [and] that these toxins can over time accumulate in the dog's body to the point where

8   poisoning, injury, and/or disease can occur." 4AC ¶¶6, 45, 135-36, 148. And "Defendants knew

9   or should have been aware that a consumer would be feeding the [] Dog Foods to his or her dog

10  multiple times each day, making it the main, if not only, source of food. This leads to repeated

11  exposure of the Heavy Metals, pesticides, acrylamide, and/or BPA to the dog." *Id*. ¶¶11, 147.

12  Thus, it is not simply "low levels" of these substances that raises alarms. Rather, as Judge Orrick

13  recently found when denying summary judgment in *Zeiger v. WellPet*, "even the small amounts

14  alleged to be in the [Dog Food] would be unsafe if the Products were consumed over a sufficient

15  time by a dog." *Zeiger v. WellPet LLC*, No. 17-cv-04056, 2021 WL 756109, at *16 (N.D. Cal.

16  Feb. 26, 2021) ("*Zeiger II*"). In *Zeiger II*, the evidence of bioaccumulation supported the

17  plaintiff's claim that the packaging was misleading because the "[p]roducts would be unsafe if

18  [they] were consumed over a sufficient time by a dog." *Id*. Here, the same allegations of

19  bioaccumulation are sufficient to support Plaintiffs' claims that Defendant's Packaging Claims

20  are materially misleading. Defendant even admits these "partial representations … implied the

21  product was 'safe' or 'pure.'" Dkt. 70 at 11.

22          Defendant's arguments about a "zero-tolerance" approach fail for the same reason, Dkt.

23  70 at 10-11. To succeed on his omissions claims, Plaintiff must "simply prov[e] that, had the

24

omitted information been disclosed, one would have been aware of it and behaved differently." *Zeiger II*, 2021 WL 756109, at \*19. "Most fundamentally, there is no authority from California courts or the Ninth Circuit holding that there is an exception to the UCL, FAL, and CLRA just because the resulting disclosure would be widespread or that the potentially dangerous substance is pervasive." *Id*. As in *Zeiger*, "[t]he mechanism for disclosure is [Defendant]'s packaging, which [Plaintiff] would have seen when buying products. The presence of lead and arsenic are, on [Plaintiff]'s theory, material because of the safety threat they pose." *Id*. at 20. Also as in *Zeiger*, Plaintiff has alleged that this information was material both to him and the reasonable consumer. *Id*.; 4AC ¶¶18-19, 23, 36, 100-01, 103-04, 131-56. Accepting these allegations as true, Plaintiff has a stated a plausible claim for relief. *See Zeiger II*, 2021 WL 756109, at \*19 (rejecting argument "that arsenic, lead, and BPA are ubiquitous and cannot be removed entirely from the food supply"); *id*. (rejecting comparisons to *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098 (N.D. Cal. 2016), because "this case concerns viable health and safety claims, not just nutritional ones").

## C.    Plaintiff Properly Alleges Negligent Misrepresentation

Like the rest of its motion, Defendant's attempt to dismiss the negligent misrepresentation claim rehases arguments already rejected by this Court. California's consumer protection laws, including negligent misrepresentation, "prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Zeiger I*, 304 F. Supp. 3d at 850-51 (alteration in original). Plaintiff explicitly alleges that a reasonable consumer would be deceived by Defendant's marketing. The basis for this deception—the presence or risk of Contaminants— must be accepted as true and has survived Rule 12(b)(6) and summary judgment in this Circuit, including in this Court, more than once. Dkt. 23 at 9-10; *Zeiger I*, 304 F. Supp. 3d at 851; *Zeiger*

1   *II*, 2021 WL 756109, at *19-20; *Reitman*, 2019 WL 1670718, at *5; *Big Heart*, 2019 WL

2   8266869, at *18. Whether the Packaging Claims are misleading—based on the alleged testing

3   results, the health risks posed by bioaccumulation, and the concerns of Plaintiff and other

4   consumers—"are disputable facts that may or may not be true; but Plaintiff has sufficiently

5   alleged facts to put Defendants on notice of the circumstances giving rise to their claims."

6   *Reitman*, 2019 WL 1670718, at *5.

7          The allegations regarding testing and Defendant's knowledge of the results are likewise

8   plausible. Plaintiff alleges not just that Defendant "knew the results at the time of sale," Dkt. 70

9   at 12. He avers also that "Defendants attempted to convey to their consumers that Defendants

10  could be trusted to properly and sufficiently test for [contaminants] in the [] Dog Foods" and that

11  "Defendants knew or should have known that consumers paid premium prices and expected

12  Defendants to regularly test for Heavy Metals and sufficiently monitor the presence of Heavy

13  Metals in the Contaminated Dog Foods." ¶¶51, 55, 71, 74, 88. But the Dog Foods "were not

14  sufficiently tested for [contaminants]." ¶¶37, 75, 84. Thus, it is not simply Plaintiff's independent

15  test results that form the basis for his negligent misrepresentation claim. Defendant's failure to

16  conduct its own testing renders the Packaging Claims false and gives rise to Plaintiff's negligent

17  misrepresentation claim.

18         Defendant's second argument—invoking once again the economic loss rule—was already

19  rejected by this Court. Dkt. 23 at 13-14. Invoking *Robinson Helicopter Co. v. Dana Corp.*, this

20  Court properly recognized that "[a] tort claim may proceed where a defendant breaches a duty

21  'either completely independent of the contract or arises from conduct which is both intentional

22  and intended to harm' including 'where the contract was fraudulently induced.'" *Id*. at 13 (quoting

23  34 Cal. 4th 979, 989-90 (2004)). "Plaintiffs negligent misrepresentation claim sounds far more in

24

1    fraud than breach of contract or negligence. As such, this Court [wa]s not persuaded that the

2    economic loss rule requires Plaintiffs' negligent misrepresentation be dismissed as pled." *Id.* at

3    13-14 (citing *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th

4    Cir. 2008)). Defendant offers no reason—such as a change in the law or the way Plaintiff pleads

5    his claim—that merits a reversal of that decision now.

6         **D.    The CLRA Does Not Expressly Require Direct Transactions**

7              The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts

8    or practices undertaken by any person in a transaction intended to result or which results in the

9    sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). But Defendant's

10   attempt to dismiss this claim conflates the words "transaction" and "consumer". Most notably in

11   *Schauer v. Mandarin Gems of California*, the court did not rule that the CLRA requires a direct

12   transaction. 125 Cal. App. 4th 949, 960 (2005). Rather, the plaintiff, as recipient of an engagement

13   ring from the purchaser of the ring, did not meet the definition of "consumer" under the CLRA.

14   *Id*. The *Schauer* court went on to state that the plaintiff would have a claim if her ex-husband

15   would have simply assigned her his rights. *Id*; *see also Vega v. CarMax Auto Superstores Cal.,*

16   *LLC*, No. B278249, 2018 WL 3216347 (Cal. Ct. App. July 2, 2018) (plaintiff did not meet the

17   definition of consumer as "he was not the party who bought the car."); *Thayer v. Benjamin*

18   *Franklin Plumbing*, No. A129201, 2011 WL 5056277, at *5 (Cal. Ct. App. Oct. 25, 2011) ("A

19   third-party beneficiary of a contract for such goods or services is not a 'consumer' within the

20   meaning of the Consumer Legal Remedies Act.").

21             Multiple courts have concluded that CLRA claims are not limited to direct transactions.

22   *See Johnson v. Nissan N.A., Inc.*, 272 F. Supp. 3d 1168, 1183 (N.D. Cal. 2017) ("The CLRA does

23   not require a direct transaction between plaintiffs and defendants."); *Keilholtz v. Superior*

24   *Fireplace Co.*, No. 08-cv-00836, 2009 WL 839076, at *4 (N.D. Cal. Mar. 30, 2009) ("Defendants

1  sold fireplaces to homebuilders, who installed them in homes, resulting in their sale to Plaintiffs,

2  is sufficient to allege that Defendants entered into a transaction which was 'intended to result or

3  which result[ed] in the sale" of goods to a consumer.") (alteration in original); *Chamberlan v.*

4  *Ford Motor Co.*, No. 03-cv-2628, 2003 WL 25751413, at *7 (N.D. Cal. Aug. 6, 2003) (plaintiff

5  who purchased used car had standing to bring CLRA claims against manufacturers despite never

6  entering into transactions directly with the manufacturers); *McAdams v. Monier, Inc.*, 182 Cal.

7  App. 4th 174, 186 (2010) ("a cause of action under the CLRA may be established independent of

8  any contractual relationship between the parties") Defendant's "direct transaction" argument

9  clearly fails.

10  **V.    CONCLUSION**

11          For the reasons stated above, Plaintiff respectfully requests that the Court deny

12  Defendant's Motion in its entirety.

13  Dated:  March 17, 2021                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.

14                                            By:   s/ Rebecca A. Peterson
                                              Robert K. Shelquist (*pro hac vice*)
15                                            Rebecca A. Peterson, #241858
                                              100 South Washington Ave., Suite 2200
16                                            Minneapolis, MN 55401
                                              Telephone: 612-339-6900
17                                            Facsimile: 612-339-0981
                                              E-mail: rkshelquist@locklaw.com
18                                                      rapeterson@locklaw.com

19                                            LITE DEPALMA GREENBERG, LLC
                                              Joseph DePalma
20                                            Steven J. Greenfogel
                                              Susana Cruz-Hodge
21                                            570 Broad Street, Suite 1201
                                              Newark, NJ 07102
22                                            Telephone: (973) 623-3000
                                              E-mail: jdepalma@litedepalma.com
23                                                      sgreenfogel@litedepalma.com
                                                        scruzhodge@litedepalma.com

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson
Karla M. Gluek
Raina C. Borrelli
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
        kgluek@gustafsongluek.com
        rborrelli@gustafsongluek.com

ROBBINS LLP
Kevin A. Seely
Trevor T. Locko
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: kseely@robbinsllp.com
        tlocko@robbinsllp.com

CUNEO GILBERT & LADUCA, LLP
Charles LaDuca
Katherine Van Dyck
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone:(202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com
kvandyck@cuneolaw.com

WEXLER WALLACE LLP
Kenneth A. Wexler (*pro hac vice*)
Michelle Perkovic
55 West Monroe St., Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-mail: kaw@wexlerwallace.com
mp@wexlerwallace.com

**Attorneys for Plaintiffs**