UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD DAVID CLASSICK, JR., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SCHELL & KAMPETER, INC. d/b/a DIAMOND PET FOODS,<br><br>        Defendant. | No.  2:18-cv-02344-JAM-AC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Richard David Classick, Jr. ("Plaintiff"), the owner of a Blue Nose American Pitbull named Otis, purchased Taste of the Wild® dog food for his loyal companion until he discovered it contains undisclosed levels of heavy metals, BPA, pesticides, acrylamides and regrinds.  Plaintiff brought a putative class action against Schell & Kampeter, Inc. d/b/a Diamond Pet Foods ("Defendant"), the company that manufactures, markets, and sells Taste of the Wild® dog food.  See Fourth Am. Compl. ("4AC"), ECF No. 67.  Defendant moves to dismiss.  See Mot. to Dismiss ("Mot."), ECF No. 70.[1]

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for April 20, 2021.

1

I. FACTUAL BACKGROUND

From approximately 2017 to 2018, Plaintiff purchased Taste of the Wild® Grain Free High Prairie Canine Formula Roasted Bison and Roasted Venison Dry Dog Food from Amazon.com. 4AC ¶ 18. Plaintiff reviewed the nutritional claims and labels displayed on Amazon's website prior to purchasing the dog food. Id. From what he read on Amazon's website, Plaintiff believed that he was feeding Otis a premium dog food that was healthy and nutritious. Id. Defendant markets the Taste of the Wild® brand as a "premium" dog food that is as "nature intended" and "based on your pet's ancestral diet." See 4AC ¶¶ 27-33. The Taste of the Wild® dog food also purports to use "the best nutrition available" and is "processed under strict human-grade standards to ensure purity." See 4AC ¶¶ 34-35.

What Plaintiff did not know was that the dog food contains some amount of heavy metals (including mercury, lead, arsenic, and cadmium), bisphenol A ("BPA"), pesticides, acrylamide, and regrinds. See 4AC ¶¶ 36-37, 65, 73, 80, 87, 91, 98, 101. That information is not included on the packaging. 4AC ¶ 36. Plaintiff, therefore, alleges that Defendant misleadingly assures consumers that its dog food undergoes stringent testing and quality controls and wrongfully fails to disclose to consumers the presence of contaminants. See 4AC ¶¶ 100, 102, 105. Plaintiff alleges that Defendant's actions and omissions amount to negligent misrepresentation, violation of the California Consumer Legal Remedies Act ("CLRA"), and breach of the express warranty. See 4AC ¶¶ 174-204.

Defendant moves to dismiss the 4AC in its entirety, arguing,

among other things, that Plaintiff does not adequately plead actual or reasonable reliance and fails to allege a direct transaction. See generally Mot. Plaintiff opposes the motion. See Opp'n, ECF No. 77.

## II. OPINION

### A. Request for Judicial Notice

Defendant requests that the Court take judicial notice of a copy of the Food and Drug Administration's ("FDA") Draft Guidance for Industry #245, Hazard Analysis and Risk-Based Preventive Controls for Food for Animals (Jan. 2018). See Req. for Judicial Notice ("RJN"), ECF No. 71. Plaintiff opposes this request. See Response to RJN, ECF No. 78. Judicial notice under Federal Rule of Evidence 201 permits a court to notice an adjudicative fact that is not subject to reasonable dispute. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). "A fact is not subject to reasonable dispute if it is generally known, or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Id. (internal quotation marks and citation omitted). Thus, "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." Id. However, "a court cannot take judicial notice of disputed facts contained in such public records." Id.

"[A] publicly available FDA guidance document, is [] properly subject to judicial notice." Immanuel Lake v. Zogenix, Inc., 2020 WL 3820424, at *5 (N.D. Cal. 2020). "[C]ourts routinely take judicial notice of [] FDA guidance documents, many

3

of which also appear on the FDA's public website." Id. (citing Allen v. ConAgra Foods, Inc., 2018 WL 6460451, at *8 n.6 (N.D. Cal. 2018)).  The FDA's Draft Guidance for Industry #245 is currently accessible on the FDA's website (specifically, at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cvm-gfi-245-hazard-analysis-and-risk-based-preventive-controls-food-animals) as of the date of this order.  Thus, its "accuracy cannot reasonably be questioned," making it subject to judicial notice.  See Fed. R. Evid. 201(b).

Accordingly, Defendant's request for judicial notice is GRANTED.  The Court takes judicial notice of the document's existence.  It does not take judicial notice of any disputed or irrelevant facts within the document.

B. Legal Standard

Generally, to defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  However, where the claims sound in fraud (as claims of negligent misrepresentation and violations of the CLRA do), they must be pled with particularity pursuant to Rule 9(b).  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124–25 (9th Cir. 2009).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Id. at 1124 (internal quotation marks and citation omitted).  Claims of fraudulent omissions, like claims of fraudulent misrepresentations, are subject to Rule 9(b)'s heightened pleading standards.  Id. at 1127.  Where an omission is alleged, plaintiffs at a minimum must "describe the content of the

omission and where the omitted information should or could have been revealed." Marolda v. Symantec Corp., 672 F.Supp.2d 992, 1002 (N.D. Cal. 2009).

### C. Reasonable Reliance

Defendant's leading argument is that all three of Plaintiff's claims fail because he has not pled facts supporting actual and reasonable reliance, a necessary element of each. See Mot. at 4-11; Shamsian v. Atlantic Richfield Co., 107 Cal.App.4th 967, 983 (2003) ("justifiable reliance on the misrepresentation by the party to whom it was directed" is a necessary element of negligent misrepresentation); Durrell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1366-67 (2010) (under the CLRA, a "misrepresentation is material for a plaintiff only if there is reliance—that is, without the misrepresentation, the plaintiff would not have acted as he did."); Nickerson v. Goodyear Tire and Rubber Corp., 2020 WL 4937561, at *5 (C.D. Cal. 2020) (for a breach of express warranty claim where the parties are not in privity, "California law requires a showing that a plaintiff relied on an alleged warranty.").

Put another way, Defendant argues that Plaintiff has not satisfied the "reasonable consumer standard," which requires that Plaintiff "show[s] that members of the public are likely to be deceived." Williams v. Gerber Prods., 552 F.3d 934, 938 (9th Cir. 2008). This requires more than a mere possibility that Defendant's marketing "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Becerra v. Dr Pepper/Seven Up, Inc., 945 F.3d 1225, 1228 (9th Cir. 2019) (internal quotation marks and citation omitted).

Instead, it must be probable that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id. at 1228-29. Defendant contends that some of the marketing claims Plaintiff identifies are non-actionable puffery; Plaintiff does not allege other claims are inherently false; and Plaintiff has failed to allege a concealment claim with particularity. See Mot. at 5-11.

### 1. Statements at Issue

As an initial matter, the Court previously held that Plaintiff's second amended complaint only alleges reliance on the nutritional claims and labels he saw on the dog food's packaging and on Amazon.com. See Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss the Second Am. Compl. ("Order on SAC") at 11, ECF No. 23. That has not changed. Plaintiff "saw the nutritional claims and labels on the packaging and on the Amazon.com website" and relied on those claims when deciding whether to purchase the dog food. 4AC ¶ 18. As before, there are no allegations that Plaintiff relied on any statements beyond those. Thus, the statements found on Defendant's website or in other marketing materials are immaterial. See, e.g., 4AC ¶¶ 26-30, 33. Misstatements upon which Plaintiff did not rely cannot support claims sounding in fraud. See, e.g., Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1363 (2010).

With regard to the statements allegedly relied upon from Amazon.com, Plaintiff has not identified what those statements or claims are. The 4AC merely references "statements on

Amazon.com." or "labels, packaging, and advertising on Amazon.com." See, e.g., 4AC ¶¶ 18, 24, 158, 172, 175-76, 184, 193. This is insufficient. Plaintiff has filed four complaints and has yet to identify specific statements from Amazon.com that are separate and apart from the statements on the dog food packaging. Thus, only the alleged affirmative misrepresentations found of Taste of the Wild® packaging will be considered by the Court. Those are limited to the following:

- "The balanced diet that nature intended";
- "The best nutrition available today"; and
- "Processed under strict human-grade standards to ensure purity," providing "optimal health and vitality," supporting "optimal cellular health" and "overall good health," and helpful in maintaining "the sleek condition of good health."

See 4AC ¶¶ 32, 34-35.

### 2. Non-Actionable Puffery

First, Defendant contends that a reasonable consumer would not have relied on the first two claims above—"the balanced diet that nature intended" and "the best nutrition available today"— because they are non-actionable puffery. Mot. at 5-6. "The common theme that [] run[s] through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions . . . ." Newcal Indus., Inc. v. Ikon Office Sol., 513 F.3d 1038, 1053 (9th Cir. 2008) (internal quotation marks and citation omitted). "Generalized, vague, and unspecific assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and

7

hence are not actionable" under the CLRA. Anunziato v. eMachines, Inc., 402 F.Supp.2d 1133, 1139 (C.D. Cal. 2005). By contrast, "misdescriptions of specific or absolute characteristics of a product are actionable." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997).

Defendant argues that what "nature intended," for instance, cannot be objectively tested, see Mot. at 6, but Defendant focuses on the wrong portion of the statement. The statement also claims the dog food will provide a "balanced diet"—and that "is neither objectively true, according to [Plaintiff], nor a subjective opinion about the [product]." Zeiger v. WellPet LLC, 304 F.Supp.3d 837, 851 (N.D. Cal. 2018). Plaintiff specifically alleges that the dog food does not provide a balanced diet because it contains heavy metals, pesticides, acrylamide, BPA, and regrinds, all of which are associated with a variety of health risks. The same is true for the claim that the dog food constitutes "the best nutrition available today." "[This] is a measurable claim that [Plaintiff] seek[s] to prove false through this very suit." Id. Thus, neither statement is non-actionable puffery. Both support Plaintiff's claims sounding in fraud.

### 3. Falsity

Next, Defendant contends that Plaintiff failed to allege the remaining claims in the third statement above are false, when the reasonable consumer standard requires that Defendant's conduct be deceptive or misleading. See Mot. at 6-7; see also Gerber Prods., 552 F.3d at 938. However, all but one of the claims Defendant addresses here are not actually at issue. Defendant addresses claims pulled from the photos Plaintiff

8

1  copied into the 4AC after ¶ 35 (e.g., "developed specifically
2  for dogs," "antioxidants," "omega fatty acids," etc.), but
3  Plaintiff does not specifically challenge those claims.  The
4  only claims challenged by Plaintiff from those portions of the
5  dog food packaging are the claims quoted in ¶ 35.  The Court
6  need not address Defendant's arguments over the unchallenged
7  claims.

8  The lone claim that Plaintiff takes issue with in his 4AC,
9  that Defendant argues has not been alleged as false, is the
10 claim that the dog food is "processed under strict human-grade
11 standards to ensure purity."  Again, Defendant focuses on the
12 wrong portion of the claim.  Defendant asserts that Plaintiff
13 never alleged the dog food was not "processed under strict
14 human-grade standards," but conveniently ignores the "to ensure
15 purity."  Mot. at 7.  Plaintiff has alleged that the dog food is
16 not pure because it contains harmful heavy metals, pesticides,
17 acrylamide, BPA, and regrinds.  Thus, Plaintiff has pled with
18 sufficient particularity "what is false or misleading about a
19 statement, and why it is false."  Vess. Ciba-Geigy Corp. USA,
20 317 F.3d 1097, 1106 (9th Cir. 2003).

21           4.   Nondisclosure

22 Finally, Defendant argues that Plaintiff's claims fail to
23 the extent he alleges to have reasonably relied on a
24 nondisclosure.  See Mot. at 7-11.  There are four circumstances
25 where a duty to disclose a fact arises: "(1) when the defendant
26 is plaintiff's fiduciary; (2) when the defendant has exclusive
27 knowledge of material facts not known or reasonably accessible
28 to the plaintiff; (3) when the defendant actively conceals a

material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 255 (2011).

Plaintiff does not allege a fiduciary relationship or active concealment. Defendant argues the other two theories fail because Plaintiff cannot have been misled by partial representations that he did not rely upon in purchasing the specific type of dog food and Plaintiff does not present facts supporting his reliance as reasonable. Defendant's argument about ¶ 35 is without merit. As explained above, Plaintiff does not challenge all the language included in the photos of the dog food packaging copied into the 4AC after ¶ 35. The allegedly misleading claims are specifically quoted by Plaintiff in ¶ 35. Plaintiff does not allege that Defendant falsely claims the dog food contains "real and smoked salmon" as an ingredient of a type dog food he did not purchase for Otis, so Defendant's defense of that statement is irrelevant.

Regarding whether there are sufficient facts in support of reasonable reliance, Defendant understands Plaintiff's argument to be: (1) a reasonable consumer would not buy the dog food because it poses a material health risk to dogs; and (2) a reasonable consumer would not buy a product that contains even trace amount of the identified contaminants. See Mot. at 8. According to Defendant, Plaintiff has failed to allege that either position is reasonable because he did not plead a material health risk with particularity and a consumer "could not take a zero-tolerance approach." See Mot. at 8-11.

However, both of Defendant's arguments are premature. Plaintiff alleges the contaminants may be harmful to dogs. See, e.g., 4AC ¶ 6, 39, 81, 142, 148. Plaintiff also includes a table that sets forth the parts per billion of each contaminant found in the dog food he purchased. See 4AC ¶ 101. It is reasonable to believe that consumers would decline to purchase the dog food if they knew it contained any level of contaminants and that those contaminants may be harmful to dogs.

Defendant also argues that Plaintiff has not established that the levels of contaminants in its food are unsafe or unhealthy for dogs, see Mot. at 8-10, and that Plaintiff concedes that some levels of contaminants are unavoidable, see Mot. at 10-11. However, these issues are in dispute and are inappropriate for resolution at the motion to dismiss stage.[2] See WellPet LLC, 304 F.Supp.3d at 852. "Plaintiff[] [has] provided an actionable theory why the [dog food] is unsafe and why the labels are misleading; whether [Plaintiff] can prove [his] theory is a separate question that [the Court] cannot resolve at this stage." Id.

D. Negligent Misrepresentation

Defendant makes two additional arguments regarding Plaintiff's claim of negligent misrepresentation. Defendant argues: (1) the 4AC contains no facts showing Defendant should have known any representation on its dog food packaging was

---

[2] The cases cited to by Defendant, where similar claims were defeated, are procedurally and legally inapposite here because they were disposed of at the summary judgment stage. See, e.g., Lucido v. Nestle Purina Petcare Co., 217 F.Supp.3d 1098, 1110 (2016); Simpson v. Champion Petfoods USA, Inc., 397 F.Supp.3d 952, 972 (E.D. Ky. 2019).

11

false at the time it was made; and (2) the claim is barred by the economic-loss rule.  See Mot. 11-14.  Turning first to the economic-loss rule, the Court previously held that it does not bar Plaintiff's negligent misrepresentation claim because Plaintiff's claim "sounds far more in fraud than breach of contract or negligence."  Order on SAC at 13-14 (citing Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc., 315 F.App'x 603, 607 (9th Cir. 2008) ("We hold that California law classifies negligent misrepresentation as a species of fraud for which economic loss is recoverable.")(internal quotation marks and citations omitted)).  Defendant's somewhat new, but mostly redundant, argument does not affect that finding.

Defendant cites to Southern California Gas Leak Cases, 7 Cal.5th 391, 400 (2019) in support of the argument that the economic-loss rule applies here.  Southern California "concern[ed] a massive, months-long leak from a natural gas storage facility located just outside Los Angeles."  Id. at 394.  As a result, the economic-loss rule prevented affected businesses from recovering in negligence against the utility for purely economic losses.  Id at 414.  The application of the economic-loss rule in Southern California does not persuade this Court that it should reverse its prior holding.  As before, the Court finds that the economic loss rule does not require Plaintiff's negligent misrepresentation claim be dismissed as pled.  See Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc., 2016 WL 3519294, at *4-5 (E.D. Cal. 2016).

As for Defendant's argument that Plaintiff failed to plead any facts suggesting Defendant reasonably should have known any

statements on its packaging were false at the time they were made, that is simply not true. Plaintiff alleges that the claims that the dog food "provides [t]he balanced diet that nature intended" and "[t]he best nutrition available today" suggest that Defendant "properly and sufficiently test[ed]" for heavy metals and other contaminants in their dog food. 4AC ¶¶ 51, 71, 88. In other words: Defendant could not have labeled the dog food as "balanced" and the "best nutrition available today" had it not been conducting thorough testing. And, because Defendant must have been testing the dog food, it should have been aware of the presence of contaminants.

Moreover, the claims that Defendant's dog food is balanced, and provides the best nutrition available today, are the "positive assertion[s]" that Defendant mistakenly argues are missing. See Opp'n at 11 (citing Wilson v. Century 21 Great Western Realty, 15 Cal.App.4th 298, 306 (1993)). Plaintiff claims that this positive assertion (and others) are what led him to reasonably believe that Defendant thoroughly tested its dog food and that the dog food did not contain contaminants that might be harmful to his dog. Whether the packaging claims are in fact misleading—based on, for instance, the alleged testing results and the health risks posed by bioaccumulation—"are disputable facts that may or may not be true; but Plaintiff has sufficiently alleged facts to put Defendant[] on notice of the circumstances giving rise to [his] claims." Reitman v. Champion Petfoods USA, Inc., 2019 WL 1670718, at *5 (C.D. Cal. 2019).

E.  CLRA Claim

Lastly, Defendant asserts that Plaintiff's CLRA claim fails

13

because he did not allege a direct transaction and the CLRA "requires direct dealings between the consumer and the defendant." Mot. at 14-15. Defendant does not say so explicitly, but the Court presumes that Defendant takes issue with the fact that Plaintiff purchased the dog food through Amazon.com, not directly from Defendant. Defendant focus on two cases in support of this proposition. See Schauer v. Mandarin Gems of Cal., Inc., 125 Cal.App.4th 949 (2005); Vega v. CarMax Auto Superstores Cal., LLC, 2018 WL 3216347 (Cal. Ct. App. 2018). Neither are on point.

In Schauer, the plaintiff obtained an overvalued engagement ring in her divorce settlement with her ex-husband. 125 Cal.App.4th at 953. Her ex-husband had purchased the ring. Id. The court found that the plaintiff did not have a right to sue the jeweler under the CLRA because she was not the purchaser of the ring. Id. at 960. Thus, under the CLRA, she was not the consumer—her ex-husband was. Id. In Vega, the plaintiff's mother purchased a Ford Mustang for him from CarMax. 2018 WL 3216347, at *2. The plaintiff sued CarMax for misrepresenting and concealing facts about the condition of the car. Id. at *3. There, the court also found that plaintiff did not have a right to sue CarMax under the CLRA because he was not the purchaser of the vehicle and, therefore, not the consumer. Id. at *8.

Here, Plaintiff is unquestionably the consumer. Plaintiff purchased the dog food. That he purchased it from Amazon.com, and not directly from Defendant, is of no consequence. This Court agrees with the many courts that have held that the CLRA does not require a direct transaction between plaintiffs—the

14

consumer—and defendants—the manufacturer or producer of the goods. See Johnson v. Nissan North Am., Inc., 272 F.Supp.3d 1168, 1184 (N.D. Cal. 2017) (the plaintiff, who purchased her vehicle through CarMax, had a right to sue the car manufacturer under the CLRA); Keilholtz v. Superior Fireplace Co., 2009 WL 839076, at *4 (N.D. Cal. 2009) ("Plaintiffs' allegations that Defendants sold the fireplaces to home builders, who installed them in their homes, resulting in their sale to Plaintiffs, is sufficient to allege that Defendants entered into a transaction with 'was intended to result or which result[ed] in the sale' of goods to a consumer.") (quoting Cal. Civ. Code § 1770(a)); Chamberlan v. Ford Motor Co., 369 F.Supp.2d 1138, 1144 (N.D. Cal. 2005) ("Plaintiffs who purchased used cars have standing to bring CLRA claims, despite the fact that they never entered into a transaction directly with Defendant.").

Plaintiff purchased Defendant's dog food. He is a consumer with a right to sue under the CLRA.

## III.  ORDER

For all the reasons set forth above, the Court DENIES Defendant's Motion to Dismiss.

IT IS SO ORDERED.

Dated: May 18, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

15